### P. M. SANDERS ET AL. v. THE STATE.

#### No. 1831. Decided May 28, 1913.

**1.—Forfeited Appeal Bond—Second Bond—Release on First Bond.**

Where appellants had entered into a former appeal bond and the judgment of conviction was reversed and the cause remanded, and they then entered into a second appeal bond after defendant's second conviction, a forfeiture could be legally declared on the second bond against the defendant and his sureties, even though the first bond had been a valid obligation. Following Peacock v. State, 44 Texas, 11, and other cases.

**2.—Same—Statutes Construed—Appeal Bonds.**

The law contemplates that after each conviction the amount of bail shall be fixed, and that a new appeal bond must be executed where defendant had appealed before, the case having been reversed and another conviction had, and that the sureties on the first appeal bond are released.

**3.—Same—Evidence—Bail Bond—Judgment Nisi—Approval—Pleading.**

It is not necessary to state in the judgment nisi or the scire facias that the bail bond was approved and the principal released from the bond; this is a question of evidence and not of pleading, and there was no error in admitting in evidence the bail bond and judgment nisi, and to show by other evidence that the bond was approved by the judge and sheriff and the principal released thereon.

**4.—Same—Appeal Bond—Reversal—Release of Sureties.**

Where defendant, after conviction of a felony, enters into an appeal bond, and the judgment is reversed and the cause remanded, the sureties on said appeal bond are not liable thereon, where their principal fails to appear at the next term of the court. Following Wells v. State, 21 Texas Crim. App., 594. Overruling Weaver v. State, 43 Texas, 386; Riviere v. State, 7 Texas Crim. App., 55. Prendergast, Judge, dissenting.

**5.—Same—Statutes Construed—Functus Officio.**

Under article 945, Code Criminal Procedure, where the Court of Criminal Appeals awards a new trial to the defendant, the cause shall stand as it would have stood in case a new trial had been granted by the court below, and, in such case, the recognizance on appeal or the appeal bond has served its purpose and is functus officio. Prendergast, Judge, dissenting.

**6.—Same—Judicial Construction—Legislative Intent.**

Where the Legislature, with a knowledge that this court had given the construction to recognizance in a misdemeanor case that the sureties were released from the recognizance when a cause is reversed and remanded, twenty-one years thereafter provided by law for a recognizance or appeal bond in certain felony cases, and in doing so used exactly the same language that had theretofore been used in recognizances in misdemeanor cases, it must be presumed that they did so under the judicial construction heretofore made, and the courts will so construe the law.

**7.—Same—Policy of the Law—Appeal Bond—Recognizance.**

When the Legislature knew the construction placed upon liability of sureties on a misdemeanor recognizance and adopted the same language thereafter in a felony recognizance, it can not be assumed by this court that it intended that the sureties assumed a greater liability in one instance than in the other, and the courts have nothing to do with the policy of such law. Following Lewis v. State, 58 Texas Crim Rep., 351.

**8.—Same—Obiter Dicta—Rule Stated—Stare Decisis.**

Obiter dicta in an opinion is when a question is discussed which is not raised and is not an issue in the case, but if the question is raised, it is an issue in the case and a decision of that question is not obiter dicta, and where a question decided by the appellate court has stood unchallenged as the law of this State for twenty-six years, it adds but strength to that opinion.

**9.—Same—Statutes Construed—Rule Stated—Reversal.**

It has always been the rule in this State under the Code Criminal Procedure, articles 323, 843, and 911, etc., that if defendant has given an appearance bond, he is entitled to be released on that bond when the case has been reversed and remanded and that the case shall stand as it would have stood if a new trial had been granted by the court below, and of necessity, the recognizance or bail bond on appeal would be deemed functus officio and the sureties discharged. Prendergast, Judge, dissenting.

**10.—Same—Statutes Construed—Misdemeanors—Felony.**

See opinion for discussion of the various Acts of the Legislature with reference to appeals in cases of felony and misdemeanors, that under the former law defendant was compelled to remain in jail in a felony case, while, in a misdemeanor, he might enter into a recognizance for his appearance upon appeal, but, since the law of 1907, a person convicted of felony can give a bond or recognizance while his case is on appeal. Referring to Wiseman v. State, recently decided.

**11.—Same—Rule of Construction—Legislative Intent.**

A rule of construction that has never been varied is that if a new law is passed, and it is the re-enactment of a former law, the construction prevailing as to the language used will be the same in the new as in the old, and if the language is borrowed from another statute, then the construction theretofore applied to that language will be applied to it in the new statute.

**12.—Same—Public Policy—Legislation.**

If, by construction of a statute, mischief is worked, this court is not the law-making power of this State and can not ingraft provisions on the laws which the language will not authorize, and where the Legislature knowing the judicial construction placed upon misdemeanor recognizances used the same language in a felony recognizance, it must be presumed that they intended that such should continue the construction to be placed thereon. Prendergast, Judge, dissenting.

Appeal from the District Court of Angelina. Tried below before the Hon. James I. Perkins.

Appeal from a forfeited appeal bond in the sum of $8000, judgment final.

The opinion states the case.

*King & King* and *V. E. Middlebrook* and *Ingraham & Hoddes,* for appellant.

*C. E. Lane,* Assistant Attorney-General, for the State.—On question of admitting in evidence judgment nisi and bond: Morse v. State, 39 Texas Crim. Rep., 566.

On question of approval of bond: Crumpacker v. State, 46 Texas Crim. Rep., 132; Holt v. State, 20 Texas Crim. App., 271; Brown v. State, 40 Texas, 50.

HARPER, Judge.—This is a suit on a forfeited appeal bond. It appears from the record that one Joe Bug Roquemore was indicted, charged with murder in the first degree. Before trial the first time he did not seek to be released on a bail bond, but remained in jail until tried. When tried, on May 26, 1908, he was adjudged guilty of murder in the second degree and his punishment assessed at ten years confinement in the State penitentiary. His motion for a new trial being overruled, he gave notice of appeal, and asked that the amount of his bail on appeal be fixed, and the court did so, fixing it in the sum of six thousand dollars. Thereupon, on June 6, 1908, he entered into an appeal bond in said sum with good and sufficient sureties, conditioned as required by law, and he was released from jail on said bond. Thereafter this court reversed said cause and remanded it to the District Court of Angelina County for a new trial. No additional bail or appearance bond was required of appellant, but thereafter, in May, 1909, the cause was again called for trial, and the defendant appearing, the cause was tried and on the 12th day of May, 1909, the jury again found him guilty of murder in the second degree and his punishment assessed at confinement in the penitentiary for a term of fifteen years, and the sheriff again took charge of Roquemore and confined him in jail. His motion for new trial being overruled on May 21, 1909, defendant gave notice of appeal, and his bail was fixed by the court in the sum of eight thousand dollars. On June 7, 1909, he entered into bond with appellants as sureties, conditioned as required by law, and he was again released from jail,—the bond being approved by the judge trying the cause, and the sheriff. His case was again reversed by this court and remanded to the District Court of Angelina County for another trial. No additional bond was required of Roquemore other than this bond on appeal, and when court convened, his case was called for trial. He did not appear and this last bond was forfeited. Citation issued to the sureties, and on final hearing the forfeiture was made final, from which judgment the sureties prosecute this appeal.

The first contention of appellants is that when Roquemore was first convicted and gave the first bond in the sum of six thousand dollars, there was no authority in law on the second conviction to demand another bond, and the bond executed by them is not binding on them. This question has been frequently before this court, and it was held that even though the bond first given had been a valid obligation, conditioned after his second conviction for the appearance, that when the sheriff refused to release Roquemore on such bond, and demanded a new bond,

which was given to secure the release of Roquemore, a forfeiture can be legally declared on such bond, and the sureties held liable thereon. Art. 510, C. C. P.; Peacock v. State, 44 Texas, 11; Lindley v. State, 17 Texas Crim. App., 120; Roberts v. State, 22 Texas Crim. App., 64. We think it clearly the intention of the Legislature, and the Act so contemplates, that after each conviction, the amount of bail shall be fixed, and the defendant required to enter into a recognizance or bail bond in said sum, and at least after the second conviction, arrest and incarceration of the principal, and the execution of a new bond, the sureties on the first bond on appeal were released, and if the State is entitled to any forfeiture it would be on the bail bond executed after the last conviction and which was executed to secure and did secure the release of Roquemore from custody.

The next objection urged is that the court erred in admitting in evidence the bail bond on which appellants were sureties, the ground of objection being: "Because there was no allegation in the judgment nisi or in the scire facias in this cause that said bail bond had ever been accepted or that the defendant had been released from custody by virtue of said bond, and there are no allegations in either that such bond had been approved by the sheriff of Angelina County, nor any allegation that the same had ever been approved by the judge trying said cause in which the bond was taken, or his successors in office, and that after said bond was given, approved and accepted, that defendant had been released from custody." The law requires that the bail bond on appeal shall be approved both by the judge trying the case, and the sheriff of the county before the former is entitled to be released (art. 903, Code of Crim. Proc.), but is it necessary to plead such facts, or state them in the judgment nisi or citation to the sureties thereon. Article 489 of the Code of Criminal Procedure provides when the forfeiture may be had, and provides that "judgment shall be entered that the State of Texas recover of the defendant the amount of money in which he is bound, and of his sureties, the amount of money in which they are respectively bound, which judgment shall state that the same will be made final unless good cause be shown at the next term of the court why the defendant did not appear." The judgment nisi in this case complies with these requirements. Article 491 states the requisites of the citation, and while there are seven requisites named, none of them require that the judgment nisi, nor the citation, shall state the bond was approved and the principal released on the bond. This is a question of evidence and may be proved as any fact in a case. It is never necessary to plead one's evidence in a case. In this case the evidence plainly shows that the bond was approved both by the trial judge and the sheriff, and the principal released on the bail bond. The same objections were urged to the introduction of the judgment nisi in evidence, but for the reasons above given we hold that the court did not err in admitting it in evidence. The court instructed the jury to return a verdict for the State for the full amount of the bond, and this brings into review the

only remaining question made by the record.    This court having reversed and remanded the cause, would a proper construction of our statutes and the bond render liable the sureties for the failure of the defendant to appear at the next term of the court?

It is admitted by appellants that, had this court affirmed the judgment, the conditions of the bond are such, that in the event he failed to appear and abide the decision of this court, the sureties on the bond would be liable, but they contend, under the peculiar wording of the Code, and the conditions in the bond on appeal, that the sureties were discharged from all liability when this court reversed and remanded the cause, and this contention has support in the decisions of this court. In passing on this question the Supreme Court held, when it had jurisdiction over these matters, that the sureties on recognizance, on appeal would be liable, even though the case was reversed and remanded.    In the case of Weaver v. State, 43 Texas, 386, Judge Gould said:

"It is sufficient to say, that by the terms of the recognizance the sureties are bound for the appellants' appearance at the District Court to abide the judgment of this court.    In the case we are considering that judgment is not that the defendant be discharged, but that the case be reversed in order that it may be tried again.    Until defendant has ·made his appearance and has obtained the leave of the court to depart the condition of the recognizance prescribed is for all appeals, whether by the State or defendant.    Previous to the enactment of the statute prescribing this form, the law required the defendant, when the appeal was by the State, to enter into recognizance with sureties 'to appear before the District Court to answer the criminal accusation against him in case the judgment of the District Court be reversed.' (Paschal's Dig., art. 3187.)    The form now prescribed is believed to be sufficient to secure the appearance of the appellant at the proper term of court to answer the accusation against him if the effect of the judgment of this court be to remand the case for a new trial."    This court after its organization, in an opinion by Judge White, in the case of Riviere and others v. State, 7 Texas Crim. App., 55, followed that opinion, but in a later opinion, while the same learned judge was on the bench, this court held otherwise with his full concurrence, and based its opinion on a new provision of the Code of Procedure, adopted subsequent to the decision in those cases.    The Twenty-second Legislature added the following provision to our Code of Procedure, which is now article 945: "Where the Court of Criminal Appeals awards a new trial to the defendant, the cause shall stand as it would have stood in case the new trial had been granted by the court below."    Since the adoption of this provision of the Code, this question was before this court again in the case of Wells et al. v. State, 21 Texas Crim. App., 594, and this court held: "It is only in the case of an *affirmance* of the judgment of conviction by this court, that the defendant's recognizance, given on appeal, can be forfeited.    When the judgment of conviction is reversed, and this court awards a new trial to the defendant, the cause stands as it

would have stood in case the new trial had been granted in the court below. In such case the recognizance given on appeal has served its purpose, and is functus officio. . . . We conclude, therefore, that the recognizance of the defendant on appeal was no longer of any binding force after the reversal of the judgment and the awarding of a new trial by this court, and can not support the judgment of forfeiture." In this case both the Weaver and Riviere cases are referred to, but it is held that they were not the law since the adoption of article 945. The opinion in this case was rendered in 1886, the law only allowing at that time a recognizance to be given in cases of misdemeanor convictions. Thus it is seen that a construction was given of the language and conditions of the recognizance, and this opinion, so far as we have been able to ascertain, has never been limited nor overruled. The Legislature, with the knowledge that this court had given this construction to the recognizance in a misdemeanor case, in 1907 (twenty-one years subsequent to the rendition of the opinion in the Wells case, supra), also provided for a recognizance and bail in certain felony cases, and in doing so used exactly the same language that had theretofore been used in recognizance in misdemeanor cases. (See arts. 919 and 903, Code of Procedure.) And it is a well recognized rule of construction that when a Legislature in enacting a new statute uses identically the same language as that formerly used in the old statute, it is supposed to know the construction that had been placed on these words, and to have used the same words in the same sense as theretofore given them. (For a long list of authorities see Lewis v. State, 58 Texas Crim. Rep., 351.) Mr. Sutherland in his work on Statutory Construction, section 255, says: "If the Legislature use words which have received a judicial interpretation they are presumed to be used in that sense, unless the contrary intent can be gathered from the statute."

In providing for the giving of recognizance or bail bond on appeal in felony cases, the Legislature in using the same terms and language which were used in misdemeanor recognizances, it must be held that this recognizance should have the same construction, meaning and intent as given to the misdemeanor recognizance. It is said that the Legislature certainly did not intend, in adopting the felony recognizance, where a person had not given a bail bond prior to his conviction, that in the event this court reversed and remanded the cause, the person charged with crime would be released. This phase of the subject should be considered, for such a construction may result in much mischief, but this court is not the law-making body, and in construing each law passed, it must do so in accordance with the well recognized canons of construction, and when the Legislature knew the construction placed on liability of sureties on a misdemeanor recognizance, adopted the same language in a felony recognizance, we can find no just ground to hold that they intended the sureties assumed a greater liability in one instance than in the other. And while it may seem to work a hardship upon the State to so hold, yet, as the State elected the terms in which it would enact

the law, and the sureties who went on this recognizance, can justly claim that they did so with the knowledge that this court had held in case the cause was reversed their liability would cease, and now to change the construction to be given the language, in order to mulct the citizen in the amount of the bond, some eight thousand dollars would be unjust to them. Neither construction will bring Roquemore back for trial,—he is gone, whether the sureties are made to pay the bond or not. We think it would be the part of wisdom for the Legislature to change the phraseology of the recognizance and make it plain that when one becomes surety thereon, he binds himself to have his principal in court, whenever demanded, whether the case is affirmed or reversed and remanded. But in the case before us, the sureties appear, point us to the case of Wells v. State, supra, wherein this court had held their liability ceased with the reversal of the case, and demand that under it they be held not liable. An injustice will result regardless of the construction given, but we think a too grave injustice would be done the citizen, who must at his peril know the law, to say that while this court held in the Wells case that under the law their liability ceased upon the reversal of the case (and which fact the law presumes they knew), yet, as the principal has escaped, we will hold that the law is not as it was written in that case, and a new construction given the same identical language, that the State may recover from them a large sum of money.

We are of opinion that as the court had construed the language of our Code, and held the sureties on recognizance on appeal discharged upon a reversal of the case, that with this construction known to them, the Legislature placed the same language in the felony recognizance, and under all the rules of law the same construction must be given the language as had heretofore been placed thereon.

We wrote the above opinion some time ago, but as Judges Davidson and Prendergast were not then satisfied as to its correctness and on a number of occasions we have had this matter under advisement in order that we might agree upon a correct construction, harmoniously, but having reached the point where there will of necessity be a parting of our ways, unless some of us should surrender our convictions in the premises, we have decided to discuss at more length the last proposition involved. The court is unanimously of the opinion that all the questions discussed herein are correctly decided, except the last, but as to the last proposition Judge Prendergast has prepared an opinion in which he contests the correctness of the decision on the proper construction of the felony recognizance, consequently it may not be improper to review our laws as applicable to bail bonds and recognizances. Article 323 of the Code of Criminal Procedure provides: "A recognizance or bail bond, entered into by a defendant, and which binds him to appear at a particular term of the District Court, shall be construed to bind him and his sureties for his attendance upon the court from term to term, and from day to day, until discharged from further liability thereon, according to law." This article appears in the Code of 1856, being article 267,

and its terms have not been altered nor amended from that day to this in any material respect, and under the terms thereof we affirmed the case of Roscoe Weiseman et al. v. State, in an opinion by Presiding Judge Davidson, in the last few weeks (it not yet having been officially reported), although section 2 of the Acts of the Thirtieth Legislature, page 31, provided that immediately upon a return of verdict of guilty, the defendant should be taken into custody, and the "sureties be considered as discharged," one article of the Code above quoted providing that when a defendant, before trial, had entered into a bail bond, it should bind him and his sureties for the appearance of the defendant "until discharged from further liability in accordance with law," and another provision, article 843: "The effect of a new trial is to place the cause in the same position it was before trial had taken place." This was also a part of the Code of 1856, being then article 674. That the bond entered into did not permit the defendant to remain at large after conviction for a felony, pending an appeal, was also made plain by the Code of 1856. Article 721 of that Code reads: "Where the defendant appeals in case of felony, he shall be committed to jail until the decision of the Supreme Court can be made." Thus in case of felony from 1856 to 1907 no person convicted of a felony could give a bond or recognizance while his case was on appeal, but it was mandatory that he be confined in jail pending his appeal, and under every decision rendered by this court from 1856 down to and including the Weiseman case just decided, it has been held that where a person charged with felony had given bond and was convicted, when a new trial was granted, either by the court trying the case or by this court, he was entitled to be released on that bond, and in the event he failed to appear for trial, after conviction and new trial granted, the sureties on the original appearance bond were liable, and a recovery could be had thereon. In the case of Ex parte Guffee, 8 Texas Crim. App., 409, this question is thoroughly discussed, and in that case it was held that where a person had been indicted, gave bond for his appearance, and was tried and convicted, appealed and his case reversed, he was entitled to be released on his original bond, and the Code and reasons for the rule are there all brought in review, and in every case where this question had been raised the holding of this court has been in accordance with that opinion.

But the rule was different in misdemeanors, and instead of being compelled to remain in jail as in felony cases, in the Code of 1856 it was provided that a person convicted of a misdemeanor might enter into a recognizance for his appearance (art. 722, Code 1856), and that has been the law from that day to this. As to whether a surety on a misdemeanor recognizance on appeal was liable thereon in case of reversal came up for decision in the case of Weaver v. State, 43 Texas, 386, for the first time, so far as we have been able to ascertain, and the surety on the recognizance was held liable as stated hereinbefore, and this opinion was followed in Riviere v. State, 7 Texas Crim. App., 55, but the question came before this court again in the case of Wells v. State,

21 Texas Crim. App., 594, and the cases of Weaver v. State and Riviere v. State, supra, were expressly overruled, and held no longer the law of this State, the opinion in the Wells case being based on a new article of the Code of Criminal Procedure adopted by the Twenty-second Legislature, being section 45 of chapter 15, reading: "Where the Court of Criminal Appeals awards a new trial to the defendant, the cause shall stand as it would have stood in case a new trial had been granted by the court below." In the Wells case it being held by this court that in case of reversal the recognizance on appeal became functus officio, and the defendant went back on his original bond. It is claimed that this is but obiter dicta, as it was not necessary to a decision of that case. The appellant raised two questions on appeal, one that the case having been reversed he was not liable as surety on the appeal bond; and another was that the grand jury returned the indictment was not a legal grand jury. Both contentions of the appellant were sustained, and how one can be considered obiter dicta any more than the other surpasses our comprehension. It might as well be said that when a case is appealed to this court and we hold the first proposition submitted presents error, it is not necessary to pass on the others, as all but the first would be obiter dicta. *Obiter dicta*, as we have always understood that term, is when a question is discussed, not raised and not an issue in that case; if the question is raised, is an issue in the case, then a decision of that question is not obiter dicta. (See Bouvier's Law Dictionary, volume 1, pages 567 and 568.) Again, it is said if the Wells case, supra, is not merely *dictum*, then it has not been referred to since being rendered. Why not go further and state that since its rendition in 1886, that question has not been before this court until this case was appealed. All the courts of this State had apparently accepted the opinion in the Wells case as the law of this State, and have been following it, and the fact that the question had not been again presented is one of the strongest arguments that the bench and bar of this State accepted that opinion as the law, and appreciated the force and cogency of the reasoning therein contained. When we announce the law in a way that does not appeal to the judgment of the bench and bar, the question is time and again presented to us, and we are asked to review our former holding, but in this case the opinion of this court in the Wells case, in the construction of the statute, stood unquestioned and unchallenged as the law of this State for twenty-six years, and this is the first time that it has been called in question. So the effort to belittle it by stating that no opinion has been found approving it, instead of doing so but adds strength to that opinion when it is known that *no opinion of this court has ever questioned its correctness,* and no case questioning it has been presented to this court until now.

It is then stated that the Wells case is not the law, and should not have been rendered. If it is erroneous, the sooner it is overruled the better it will be is an opinion in which we heartily concur. But is it erroneous in construing the statutes? There is not and has never been

any question under our Code that when a person gives a bond for his appearance, is tried and convicted, and a new trial granted by the trial court, that the prisoner is entitled to be released on his original bond, by virtue of articles 323 and 843 of our Code of Criminal Procedure. They are subject to no other or different construction. Then in case a new trial is not granted by the trial court, and a recognizance or bail bond on appeal is entered into, article 911 of the Code provides that if we reverse the case, and grant a new trial, the case shall stand as it would have stood if a new trial had been granted by the court below. It is not seriously contended that if he has given an *appearance bond,* that in this instance he is entitled to be released on that bond as was held in the Guffee case, supra, and if he defaults the sureties on that bond are liable, as was recently held in the Weiseman case, and in all other cases decided by this court, and in that character of case of necessity the recognizance or bail bond on appeal would be deemed functus officio and the sureties discharged, because there can not be two bonds and two sets of sureties liable on the two different obligations—one or the other is discharged from all liability, and the Wells case but followed a long list of decisions which had held that the sureties on the appearance bond were liable when the trial court or this court granted a new trial, and is in strict accord with the provisions of our Code. But the contention is made that even though this be true, and if a defendant has given an appearance bond, upon the granting of a new trial by this court the sureties on the appeal bond or recognizance are discharged, and the sureties on the appearance bond are bound for his appearance, yet in the event he has given no appearance bond, then the sureties on his appeal bond and recognizance are not discharged, and may be held liable for his non-appearance. We find no words used in our Code authorizing the construction that the sureties on the appeal bond or recognizance may be held liable in one instance and not in the other. Either they are liable, in the event a new trial is granted, for his appearance at the trial, or they are not liable. The language used in adopting the provisions of the Code authorizes no other construction. The Legislature could have so provided, but they did not do so, and while it might be for the best that it did so read, yet we have never been and are not now the law-making power. But it may be said, that must have been the intention of the Legislature; if so, they had a poor and meager way of expressing their intention. How are we to gather the intent of the Legislature? First, by the words used, and if they are plain and unambiguous, then there is nothing to construe, and we must give force and effect to what they have enacted. Next, if the language is ambiguous or the meaning not clear, then we are authorized to take into consideration the object and purpose of the law, the evil sought to be remedied, and the circumstances under which the law was passed. But there is another rule of construction that has never been varied from, and that is if it is the re-enactment of a law, the construction prevailing as to the language used will be the same in the new as in the old. If the

language is borrowed from another statute, then the construction there-tofore applied to that language will be applied to it in the new statute. All the authorities so hold, there being none to the contrary. If this was an entirely new statute, and none analogous thereto in our Code, other rules might prevail, but as the condition in the recognizance in felony cases is a literal copy, word for word and letter for letter, of the recognizance in misdemeanor cases, there is no rule of law which would authorize one construction to be placed on the recognizance on appeal in misdemeanor cases, and another construction to be placed on the recognizance on appeal in felony cases. As stated before, in felony cases from 1856 to 1906 a person convicted of a felony was required to remain in jail pending an appeal, but during all that time a person convicted of a misdemeanor was permitted to give a recognizance pending an appeal, and in 1886 this court held in the Wells case, supra, that in case of reversal and a new trial being granted, that the recognizance on appeal had accomplished its purpose and the sureties thereon were no longer liable. This was recognized as the law of this State for twenty years, and in 1907, when the Legislature authorized a person convicted of a felony to also give a recognizance, they used the same language exactly as heretofore used in misdemeanor recognizance on appeal, and by all the rules of law the same construction should be placed on the conditions of a felony recognizance as had theretofore been placed on recognizance in cases of misdemeanor. But it is insisted this will work great mischief, in that in some cases it will permit persons to be at large without bond in case this court shall grant a new trial. This case was appealed to this court last year, and we thought that such might be the result, and we laid it on the shelf until the convening of the Legislature, and then called their attention to the matter. A bill was introduced rectifying the matter, passed one branch of the Legislature, but failed of passage in the other branch. If mischief is worked, as before stated, this court is not the law-making power of this State, and we can not engraft provisions on the laws which the language will not authorize. The language in misdemeanor recognizances and the articles of our Code having been construed by this court in the Wells case, that the recognizance on appeal became functus officio and the sureties discharged, the Legislature knowing this to be the construction that had been placed thereon, used the same language in a felony recognizance, and we must presume that they knew and intended that such should be the construction that should be placed thereon. If mischief is worked we do not feel responsible therefor, and while as stated by Judge Prendergast, if the language used is subject to two constructions, that construction should be adopted which would cause the least or no mischief, yet that rule has no application in a case where a statute has been construed, and the only alteration or change made is not in the language used, but only in applying the statute to cases in which it was theretofore not applicable—the language being the same in the latter as in the former case.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*

DAVIDSON, Presiding Judge.—In view of the Wells case, 21 Texas Crim. App., 594, and the legislation upon which it is based and the repeated re-enactment of those statutes and the long and uninterrupted acquiescence in that decision by the bench and bar, I shall agree with Judge Harper's conclusion to reverse. I am somewhat further impelled to this view also by reason of the fact that this court was unanimous in deciding the recent case of Weiseman et al. v. State. That case was discussed fully and on various occasions, and the final conclusion reached as therein announced. It occurs to me if the decision in the Weiseman case is correct, the judgment in this case should be reversed. I agree to the conclusion, therefore, that the judgment should be reversed.

PRENDERGAST, Judge (dissenting).—I concur in the opinion of Judge Harper in this case on every question discussed and decided, except the last. After a most careful investigation and study of this question I have reached the conclusion that this last question should be decided the reverse of what Judge Harper has written. I do not propose to discuss the question at any length, but feel that in justice to myself it is necessary for me to express my views.

But one case is cited in the opinion to sustain it,—that is, the case of Wells v. State, 21 Texas Crim. App., 594. In the first place, I am convinced that that decision on the point cited is clearly *dictum,* and should not be followed. The report of that case, and the opinion itself, shows that that question on the point for which it is cited in this case was not needful to the ascertainment of the question between the parties and was altogether unnecessary. As said by the United States Supreme Court in Carroll v. Carroll, 16 Howard, 275 (14 L. Ed., 936), "This court has never held itself bound by any part of an opinion which was not needful to the ascertainment of the question between the parties." In this Wells case, supra, it is shown that this court held that the indictment in that case in which the bond was given, was *absolutely void,* because it was found by a grand jury composed of thirteen persons, and reversed and dismissed the case *on that ground.* It was, therefore, wholly unnecessary for the court to have passed upon the other question, and is and should be, held as *dictum.* I have searched diligently for any other decision by this court referring to or approving the opinion in said Wells case on that question, and have not found any. It is the rule of this court when a reversal is ordered to pretermit the discussion of any question which will not or can not arise on another trial. This should have been done on this question in the Wells case. This rule is followed in this court all the time as shown by the reports. But when this court affirms, it is necessary and proper to decide all pertinent questions, correctly raised.

In the second place, I believe the Wells case on that point was not correct, and that the article of the Code (876), now article 945, was incorrectly construed. That article is: "Where the Court of Criminal Appeals awards a new trial to the defendant, the cause shall stand as it would have stood in case the new trial had been granted by the court

below." On this same subject the statute then prescribed as it does now in article 843: "The effect of a new trial is to place the cause in the same position in which it was before any trial had taken place. *The former conviction shall be regarded as no presumption of guilt, nor shall it be alluded to in the argument.*" (Italics mine.) This latter clause, in my judgment, properly construed, should be applicable to said article 945. I think the Legislature's intention, by the enactment of article 945, was that the effect of awarding a new trial by this court, as it says, should cause the case to stand as it would have stood in case a new trial had been granted by the court below,—that is, the former conviction should be regarded as no presumption of guilt, nor shall it be alluded to in the argument. Simply that and nothing more.

But whether I am right in this construction or not is not the controlling question. Prior to the decision in said Wells case, both this court and the Supreme Court, when it had criminal jurisdiction, expressly decided the question the reverse of what the Wells case on this point holds, and what the opinion in this case holds. This is expressly conceded in Judge Harper's opinion herein. Those cases are Weaver v. State, 43 Texas, 386, and Riviere v. State, 7 Texas Crim. App., 55. In the Weaver case the Supreme Court fully discussed and pointedly decided the question. This court in the Riviere case pointedly stated the question, recognizing the authority in the Weaver case and in effect approved and followed it. I think this court should follow and approve the Weaver and Riviere cases. The Weaver and Riviere cases were not *overruled* by the Wells case. On the contrary, they were expressly recognized thereby, and simply *distinguished* by a *dictum* incorrectly to the effect that a new *statute* made a change. But whether they are approved and followed or not, still under the facts of this case, I believe the only proper construction of our statute providing for an appeal bond on conviction of a felony should be, and is, to hold the sureties on such appeal bond liable if they do not have the appellant appear and stand trial in the District Court when his case has been reversed by this court and remanded for a new trial. The facts in the Wells case, supra, are altogether different from the facts of this case. In the Wells case the defendant had made a bail bond and was out on bail at the time of his trial and conviction in the lower court. Upon conviction and appeal he entered into a recognizance so as to prevent remaining in jail pending his appeal. When this court reversed his case and ordered a new trial in the court below, the court held that that would revive and put in force again the bail bond theretofore given in the lower court before his trial therein. That is not the state of facts in this case. In this he had given no bail bond in the lower court, prior to his trial and conviction therein.

The article of the Code of 1856 (267), now 323, is entirely different. That of 1856 bound the sureties "until his (defendant's) final acquittal or conviction." Now, and when the Wells decision was rendered that

article had been changed to read, "until discharged from further liability thereon according to law." Quite a difference.

It is true in law as well as in the affairs of life that "circumstances alter cases." It is also true that a principle of law, when well established, and especially statutory, remains the same. But the application of a given principle to a given state of facts by no means follows. A principle of law that is applicable to one state of facts may be, and frequently is, wholly inapplicable to another. In fact, while a given principle of law may be applicable to one state of facts the reverse or opposite principle may be applicable to an altogether different state of facts.

All rules of construction of statutes are adopted and applied, as held all the time by all the courts, for the purpose of ascertaining the legislative intent. As correctly and tersely said by our Supreme Court in Edwards v. Morton, 92 Texas, 152-3, and approved and quoted by this court in Parshall v. State, 62 Texas Crim. Rep., 177, and in fact by all the courts: "The intention of the Legislature in enacting a law is the law itself." There are numerous rules for the construction of statutes. The fundamental object and purpose of all of them is to ascertain and give effect to the intention of the Legislature. I will call attention to some of these rules laid down by text-writers and this court.

In Lewis' Sutherland on Statutory Construction (2 Ed.), vol. II, secs. 415 and 416, he says:

"The modern doctrine is that to construe a statute liberally, or according to its equity, is nothing more than to give effect to it according to the intention of the lawmaker, as indicated by its terms and purposes. This construction may be carried beyond the natural import of the words when essential to answer the evident purpose of the act; so it may restrain the general words to exclude a case not within that purpose."

"416. There is no arbitrary form of words to express any particular intention; the intent is not identical with any phraseology employed to express it. Any language is but a sign, and many signs may be used to signify the same thing. In statutes, the sense signified is the law; the letter is but its servant or its vehicle. Language is so copious and flexible that when general words are used there is an absence of precision, and all words and collocations of words admit of more than one interpretation. In the construction of remedial statutes, while the meaning of the words is not ignored, it will be subordinated to their general effect in combination in a whole act or series of acts, read in the light of all the pertinent facts of every nature of which the courts take judicial notice. Liberal construction of any statute consists in giving the words a meaning which renders it more effectual to accomplish the purpose or fulfill the intent which it plainly discloses. For this purpose, the words may be taken in their fullest and most comprehensive sense. Where the intent of the act is manifest, particular words may have an effect quite beyond their natural signification in aid of that intent."

Our Code of Criminal Procedure, article 25, is: "The provisions of

this Code shall be liberally construed so as to attain the objects intended by the Legislature; the prevention, suppression and punishment of crime." Article 5502 (3268), Revised Statutes, is: "The following rules shall govern in the construction of all civil statutory enactments: . . . (subdivision 6.) In all interpretations the court shall look diligently for the intention of the Legislature, keeping in view at all times the old law, the evil, and the remedy." Notwithstanding this is the statute as to the construction of civil laws, as this court, in Murray v. State, 21 Texas Crim. App., 620, 2 S. W. Rep., 575, 57 Am. Rep., 623, said of said article of the Revised Statutes, so I say of this article 5502 (3268): "Though embraced in the civil statute, is, in our opinion, equally as applicable and of binding force in criminal prosecutions." These statutes, in connection with articles 9 and 10 of the Penal Code, all of which must be construed together, require this court, as I understand it, to construe all of the penal enactments of the Legislature liberally, and that the old or common-law rule that they were to be construed strictly has been abrogated. The Road Cases, 30 Texas, 503; Ex parte Gregory, 20 Texas Crim. App., 210, 54 Am. Rep., 516; Ex parte Garza, 28 Texas Crim. App., 381, 13 S. W. Rep., 779, 19 Am. St. Rep., 845.

Again, this court in Yakel v. State, 30 Texas Crim. App., 391, said: "Statutes should be so construed as to prevent mischievous consequences. Such construction finds itself supported in the good order of society, protection of the weak against the strong, and should be favored, and more especially if such a construction be in opposition to one that would tend to bring about evil results. People v. Garrett (68 Mich., 487), 36 N. W. Rep., 234; Holmes v. State, 88 Ind., 145; Am. & Eng. Ency. of Law, p. 702, note 2. The purpose and object of the Legislature in enacting the statute being shown, it is the duty of the court to so construe it as to conform to that intent and carry out such purpose."

In Albrecht v. State, 8 Texas Crim. App., 313, this court held: "If a reasonable construction of the language would tend to effectuate this purpose, and another construction, equally as reasonable, would have a contrary tendency, under well-established canons of construction, courts should not hesitate in choosing the former to the exclusion of the latter. Intention frequently controls express language in the construction of a statute. Walker v. State, 7 Texas Crim. App., 245 (32 Am. Rep., 595)."

Again in Sartain v. State, 10 Texas Crim. App., 651, this court said: " 'Courts are not confined to the literal meaning of the words employed, in the construction of statutes, but as was said in Burgett v. Burgett, 10 Rep., 221, the intention of the law-makers may be collected from the cause or necessity of the act; and statutes are sometimes contrary to the literal meaning of the words. It has been decided that a thing within the letter was not within the statute, unless within its intention. The letter is sometimes restrained, sometimes enlarged, and sometimes the construction is contrary to the letter. 4 Bac. tit. Statute, 1, secs. 38, 45, 50. Every statute should be construed with reference

to its object, and the will of the law-makers is best promoted by such a construction as secures that object and excludes every other.' Castner v. Walrod, 83 Ill., 171 (25 Am. Rep., 369); Walker v. State, 7 Texas Crim. App., 245 (32 Am. Rep., 595)." And in Whisenhunt v. State, 18 Texas Crim. App., 491, this court again said: "It is a well-settled rule of statutory construction 'that the intent and meaning should be followed, although it may seem to be contrary to the letter of the statute.' Sedgwick on Statutory Construction, 256. 'Statutes are to be construed according to the intentions of the makers, if these can be ascertained with reasonable certainty, although such construction may seem contrary to the ordinary meaning of the letter of the statute.' Id., p. 313; (Staniels v. Raymond), 4 Cush. (Mass.), 314; (Wilson v. Ireland), 4 Md., 444."

Now I go to the bond itself in this case and quote it. It is:

"The State of Texas v. Joe Bug Roquemore. No. 2929. In the District Court of Angelina County, Texas.

"Know all men by these presents: That, whereas, Joe Bug Roquemore, defendant in the above entitled and numbered cause, was heretofore, on the 12th day of May, A. D. 1909, convicted in this cause for the offense of murder in the second degree, and his punishment assessed at confinement in the State penitentiary for a period of fifteen years; and, whereas, on the 21st day of May, A. D. 1909, the defendant's motion for a new trial was by the court overruled, to which order and judgment of the court the defendant excepted and gave notice in open court of appeal to the Court of Criminal Appeals of the State of Texas; and, whereas, the court thereupon fixed the amount of the bond of the defendant pending said appeal at the sum of Eight Thousand ($8000.00) Dollars; now, therefore, we, Joe Bug Roquemore as principal, together with...........
and..........as sureties. acknowledge ourselves jointly and severally indebted to the State of Texas in the sum of Eight Thousand ($8000.00) Dollars, conditioned that the said Joe Bug Roquemore, principal herein, who stands charged with the offense of murder in this court, and who has been convicted for the offense of murder in the second degree in this court upon a trial of said charge, shall appear before this court from term to term and from day to day of the same, and not depart therefrom without leave of this court in order to abide the judgment of the Court of Criminal Appeals of the State of Texas in this case. (Signed) Joe Bug Roquemore, P. M. Sanders, Jas. W. Christian, W. P. Clevinger, W. G. Watkins, A. J. Murphy, Dr. W. T. Castleberry, R. B. Cleninger, J. P. Clevinger, W. R. McLain."

This bond is in substantial if not literal compliance with the form prescribed by our statute. Arts. 903 and 904, C. C. P.

Now, what is the condition of this bond? It is: "Conditioned that said principal shall appear before this court (the District Court) from term to term and from day to day of the same and not depart therefrom without leave of this court in order to abide the judgment of the Court of Criminal Appeals of the State of Texas in this case." What is the

judgment of the Court of Criminal Appeals when it reversed the judgment of the lower court on that appeal? Was it that the principal, Roquemore, should go scott free? Or was it that his sureties were under no obligation whatever to bring him before the said District Court when the case was again called for trial? In my judgment, clearly the effect of the bond upon the reversal of the case by this court was not that he should go scott free. On the contrary, as the bond itself states, "he shall appear before this court (District Court) from term to term and day to day of the same and not depart therefrom without leave of the court (the District Court) in order to abide the judgment of the Court of Criminal Appeals of the State of Texas in this case." I ask again, what was the judgment of the Court of Criminal Appeals in that case? Was it that he should go scott free? Certainly not. But he was to appear before that District Court and stand another trial, the same as if he had never been tried before.

In my judgment to hold that the effect of that bond, upon the reversal by this court of said case, is to turn the appellant scott free, and that it does not require that his sureties shall produce him before the District Court to stand another trial, not only would do violence to the proper construction of said bond and the law, but it would be the reverse of what was intended and meant by the Legislature. As said by Judge Davidson in Yakel v. State, supra, "Statutes should be so construed as to prevent mischievous consequences." And again, as said in Albrecht v. State, supra: "If a reasonable construction of the language would tend to effectuate this purpose, and another construction, equally as reasonable, would have a contrary tendency, under well established canons of construction, courts should not hesitate in choosing the former to the exclusion of the latter." And as again said in Whisenhunt v. State, supra: "The intent and meaning should be followed, although it may seem to be contrary to the letter of the statute. Statutes are to be construed according to the intentions of the makers, if these can be ascertained with reasonable certainty, although such construction may seem contrary to the ordinary meaning of the letter of the statute."

There is nothing in the condition of this bond, nor in our statute, which, to my mind, in any way points to the fact that when this court reverses a felony conviction and orders him to again be tried, and the appellant has prevented his confinement in jail, pending appeal, and has given no bail bond in the lower court prior to his conviction, that he should go scott free. On the contrary, in my judgment, the only reasonable construction, and I believe it was the clear intention of the Legislature, that he is to appear, and his bondsmen are required to produce him before the lower court, when his case is called for trial again and there from day to day and term to term keep him until he is properly convicted or discharged by that court. To hold otherwise, in my opinion, would not only do violence to the proper construction of said bond, but would be the reverse of what was intended and meant by the Legislature. If Roquemore had not given this appeal bond, unques-

tionably the sheriff would have, as the law requires, taken charge of him and confined him in jail until the disposition of his appeal by this court. Then, instead of going scott free, the *sheriff* would have had him for the new trial ordered by this court. Instead of this, as said by our Supreme Court when it had criminal jurisdiction, in Gay v. State, 20 Texas, 504: "These manucaptors (his bondsmen) being his jailers and be constantly in a state of commitment," they must produce him before the District Court for trial. In my opinion, being such custodians, they were bound by the bond they voluntarily entered into to produce him before the District Court when his case was again called for trial, and, not doing so, and showing no excuse whatever for not doing so, they must necessarily be compelled to pay their plain voluntary obligation to the State. In law, if not in fact, but I believe in fact, they assumed this obligation knowing that if they did not properly so produce him they must pay their plain, unequivocal statutory obligation. If the construction of Judge Harper should prevail, then said bond binds the sureties, only as if it read: If the Court of Criminal Appeals *affirms* his case on appeal, his sureties shall produce him before the District Court. If the Court of Criminal Appeals *reverses* his case, and orders him to *appear* before said District Court, and *stand another trial,* he shall go scott free, and his sureties shall not have him before said District Court to stand another trial, nor for any other purpose. To so hold, in my opinion, violence would not only be done to the language of the bond, but to its clear intent and the intent of the Legislature as well.

The form of an appeal recognizance in a misdemeanor case (art. 919, C. C. P.) is not word for word, etc., the same as for felony (art. 903), though they are not materially different.

The Weiseman case from Wilbarger County, recently decided by this court, is entirely correct, and this opinion by me is not in conflict therewith. Nor is it in support of Judge Harper's opinion herein. The sole question in the Weiseman case on this question was: When one indicted for felony had duly made a bail bond before trial, then tried and a verdict of guilty rendered, but set aside and a new trial granted by the trial court at the same term, his bail bond was held to still be in force after the new trial was granted. The question in this case was stated in the Weiseman case, but as stated therein expressly not decided.

Certainly age alone should not make any *dictum* or wrong *decision* the law. The *law* itself should prevail over any *decision,* and especially a wrong decision, however aged it may be. If that should not be the case, then surely this court should not overrule, as it does in effect, the case of O'Brien v. State, 6 Texas Crim. App., 665, which is this day correctly done in the case of Sam Davis v. State, for that decision is seven years older than the decision in the Wells case.

In my opinion this case should be affirmed.