Affirmed and Opinion filed December
2, 2010.

In
The

Fourteenth
Court of Appeals



NO. 14-09-00490-CR



Larry LaRue
Overshown, Appellant 

v.

The State of
Texas, Appellee 



On Appeal from
the County Criminal Court at Law No. 8

Harris County, Texas

Trial Court
Cause No. 1562681



 

OPINION

After a bench trial, appellant Larry LaRue Overshown,
was convicted of falsely identifying himself to a peace officer and sentenced
to 150 days in jail.  Appellant challenges his conviction in two issues,
arguing that the trial court erred in denying his motion to suppress and that
the evidence is legally insufficient to support his conviction.  We affirm.

Background

Shortly after midnight, Officers Roy Underwood and
Brian Chebret were on patrol in a marked police car when they observed a
vehicle parked in the middle of a road in an area known for drug trafficking. 
The vehicle was parked so that there were less than ten feet of available
roadway for the free movement of vehicular traffic in violation of a city
ordinance.  See Hous., Tex., Code
of Ordinances ch. 26, art. II, § 84 (2007).[1]  As the
officers pulled up behind the vehicle, they noticed a man on a bicycle leaning
into the driver’s side window.  When the man saw the officers, he rode off, and
the parked vehicle began moving forward.  Officer Chebret testified that he
suspected a drug transaction had taken place.  The officers decided to initiate
a traffic stop of the vehicle, and they activated their flashing lights and
pulled the vehicle over.

Appellant was a passenger in the vehicle.  Both
officers testified that they simultaneously approached the vehicle at the
beginning of the traffic stop, with Officer Underwood speaking to the driver
and Officer Chebret speaking to appellant.  Officer Underwood asked some
initial investigatory questions—he asked for the driver’s identification and
proof of insurance, and he asked for the name of the passenger.  The driver
said appellant’s name was Larry.  While Officer Underwood questioned the
driver, Officer Chebret asked appellant what his name was, what they were
doing, and what was “the deal with the guy on the bike.”  Appellant told
Officer Chebret that his name was Charles Williams.  Prior to verifying the
driver’s contact information in the computer, the officers briefly discussed
the conversations they had with the vehicle’s occupants, and the officers
discovered that the driver and appellant had given the officers different names
for appellant.  Officer Chebret then returned to the passenger side of the
vehicle and explained to appellant that the driver said appellant’s name was
Larry.  Appellant immediately said that his true name was Larry Overshown.  The
officers ran appellant’s name through the computer, discovered warrants for his
arrest, and arrested him.  All of this happened in less than five or ten
minutes from the time the stop began.  The officers let the driver go with a
verbal warning.

Appellant was charged with intentionally giving a
peace officer a false name while he was lawfully detained.  See Tex. Penal Code Ann. § 38.02 (West
Supp. 2009).  He moved to suppress the initial false-identification statement
he gave to Officer Chebret.  After the parties presented their evidence during
the bench trial, appellant testified for the limited purpose of his motion to
suppress.  The court denied the motion, found appellant guilty, and sentenced
him to 150 days in the Harris County jail.  This appeal followed.

Analysis

A.               
Denial of the Motion to Suppress

Appellant argues in his second issue that the trial
court erred in denying his motion to suppress the initial false-identification
statement because the statement was obtained as a result of an unreasonable
seizure in violation of the Fourth Amendment.  Specifically, he argues that the
officers lacked reasonable suspicion for the initial traffic stop and the stop
was unreasonably extended.  We conclude that appellant was seized as a result
of the traffic stop, the stop was supported by reasonable suspicion, and the
stop was not unreasonably extended.  Accordingly, the trial court did not err
in denying the motion to suppress.

1.      Standard
of Review

When reviewing a trial court’s ruling on a motion to
suppress, we view all the evidence in the light most favorable to the trial
court’s ruling.  State v. Garcia-Cantu, 253 S.W.3d 236, 241 (Tex. Crim.
App. 2008).  When the trial court does not make findings of fact, as in this
case, we presume factual findings that would support the trial court’s ruling
if the record and reasonable inferences could support these implied findings.  Id. 
We resolve conflicting testimony in favor of the trial court’s ruling because
the trial court is the sole judge of the credibility and demeanor of
witnesses.  See id.  We review de novo, however, the issue of whether the
police conduct in question amounts to an unreasonable seizure under the Fourth
Amendment because this issue requires the application of legal principles to a
specific set of facts.  Id.; Banda v. State, 317 S.W.3d 903, 907
(Tex. App.—Houston [14th Dist.] 2010, no pet. h.).

2.      Reasonable
Seizure of a Passenger During a Traffic Stop

The Fourth Amendment to the United States
Constitution protects individuals from unreasonable seizures, and oral
statements obtained as a result of an unreasonable seizure may be suppressed.  E.g.,
Wong Sun v. United States, 371 U.S. 471, 484–85 (1963).  When police
officers signal that a driver should stop a moving vehicle, and in response the
driver actually stops the vehicle, then the driver and all passengers inside the
vehicle have been seized under the Fourth Amendment.  Arizona v. Johnson,
129 S. Ct. 781, 784, 788 (2009); Brendlin v. California, 551 U.S. 249, 257
(2007); see also Brower v. County of Inyo, 489 U.S. 593, 597 (1989)
(noting that a police car’s flashing lights and pursuit constitute a “show of
authority” required for a Fourth Amendment seizure).[2]  The
seizure continues for the duration of the traffic stop, and the seizure
terminates when the police inform the driver and passengers that they are free
to leave.  Johnson, 129 S. Ct. at 788.

A traffic stop is reasonable when there exists either
probable cause to believe that a traffic violation has occurred, Whren v.
United States, 517 U.S. 806, 810 (1996), or reasonable suspicion that someone
in the vehicle is committing or has committed a criminal offense, see
Johnson, 129 S. Ct. at 784.  We evaluate the reasonableness of a traffic
stop based solely on an objective standard—an officer’s subjective intent plays
no role in our determination of whether a traffic stop was reasonable.  Whren,
517 U.S. at 812–13; see also Garcia v. State, 827 S.W.2d 937, 944 (Tex.
Crim. App. 1992) (“[A]n officer’s subjective intent is relevant only to a
credibility determination of his stated reasons for stopping or arresting an
individual.”).  Accordingly, police may validly stop a vehicle for a traffic
violation so long as the stop would be objectively reasonable, regardless of
whether the stop is a mere pretext to investigate unrelated criminal conduct.  Garcia,
827 S.W.2d at 944.

But a traffic stop that is objectively reasonable at
its inception may develop into a Fourth Amendment violation if the manner of
its execution is unreasonable.  Illinois v. Caballes, 543 U.S. 405, 407
(2005).  Thus, a traffic stop made for the purpose of “issuing a warning ticket
to the driver can become unlawful if it is prolonged beyond the time reasonably
required to complete that mission.”  Id.  This requirement, however,
does not prohibit an officer from inquiring into matters unrelated to the
purpose of the traffic stop so long as the stop is not unreasonably extended.  Johnson,
129 S. Ct. at 788; Caballes, 543 U.S. at 407; Kothe v. State, 152
S.W.3d 54, 63–65 (Tex. Crim. App. 2004).  For example, a traffic stop may last
as long as reasonably necessary to check the driver’s license and car
registration and to conduct a computer check of that information.  Kothe,
152 S.W.3d at 63.  But even if a stop becomes unlawful after its inception,
only the evidence obtained because of the Fourth Amendment violation—that is,
after the stop became unlawful—may be suppressed as “fruit of the poisonous
tree.”  See, e.g., Wong Sun, 371 U.S. at 485 (explaining that the
exclusionary rule applies to evidence “obtained either during or as a direct
result of” a Fourth Amendment violation).

Here, appellant was a passenger in a moving vehicle. 
Officer Underwood testified that the police car’s emergency lights were
activated, and both officers said that they initiated a traffic stop of the
vehicle.  The driver stopped the vehicle, and appellant remained inside when Officer
Chebret approached the vehicle and asked investigatory questions.  Accordingly,
appellant was seized.

The officers testified that they observed the car
prior to the stop as it was parked in a street, which caused less than ten feet
of the roadway to be available for the free movement of vehicular traffic.  This
violated a city ordinance and provided the officers an objectively reasonable
basis for initiating the stop, regardless of their subjective belief that the
occupants of the vehicle might have been engaged in drug activity.  Appellant
criticizes the officers’ decision to give the driver only a verbal warning,
rather than a written citation.  While the trial court was free to consider the
lack of a written citation or ticket in determining the credibility of witness
testimony, it does not mean that the officers lacked reasonable suspicion as a
matter of law.  See Duff v. State, 546 S.W.2d 283, 286 (Tex. Crim. App.
1977) (refusing to hold that the traffic stop was unlawful when the State did
not produce a copy of the ticket because the officer testified about the
purpose for the stop and the trial judge “was present and observed the
witnesses’ demeanor” and could have found that the officer was telling the
truth).[3] 
Because the stop was initiated after the officers observed a traffic violation,
the stop was reasonable in its inception and did not violate the Fourth
Amendment.

Finally, both officers testified that the false-identification
statement was made during the initial questioning of the driver.  At the time
appellant gave the false identification, Officer Underwood was obtaining the
driver’s identification and insurance information.  This occurred immediately
after the traffic stop began and prior to running the driver’s information
through the computer.  Regardless of what occurred after the statement was
given or the total length of the stop (estimated by the officers to be five or
ten minutes), the statement was given before the traffic stop was completed. 
Asking appellant for his name did not unreasonably extend the duration of the
stop.  Thus, the statement was not obtained as a result of a Fourth Amendment
violation and should not be suppressed.  We overrule appellant’s second issue.

B.                
Sufficiency of the Evidence

In his first issue, appellant argues that the
evidence is legally insufficient to support his conviction.  Specifically, he
contends that he was not “detained” at the time he gave the
false-identification statement, and even if he was detained, this detention was
not “lawful.”

1.      Standard
of Review

When reviewing the sufficiency of the evidence, we
view all of the evidence in the light most favorable to the verdict to
determine whether the fact finder was rationally justified in finding guilt
beyond a reasonable doubt.  Brooks v. State, — S.W.3d —, No. PD-0210-09,
2010 WL 3894613, at *5 (Tex. Crim. App. Oct. 6, 2010); Williams v. State,
235 S.W.3d 742, 750 (Tex. Crim. App. 2007).  We do not substitute our judgment
for that of the fact finder by re-evaluating the weight and credibility of the
evidence, and we defer to the fact finder’s resolution of conflicting evidence
unless the resolution is not rational.  Brooks, 2010 WL 3894613, at *7
& n.8, *11; Williams, 235 S.W.3d at 750.  We must determine as a
matter of law whether the evidence presented actually constitutes a criminal
offense.  Williams, 235 S.W.3d at 750.

2.      Meaning
of the Phrase Lawfully Detained

Appellant was convicted of intentionally giving a
false name to a police officer while being lawfully detained.  The statute
provides as follows: “A person commits an offense if he intentionally gives a
false or fictitious name . . . to a peace officer who has . . . lawfully
detained the person.”  Tex. Penal Code
Ann. § 38.02(b) (West Supp. 2009). 
When interpreting a statute for the purpose of determining whether the evidence
presented actually constitutes a criminal offense, we look to the Code
Construction Act, Tex. Gov’t Code Ann.
§§ 311.001–.034 (West 2005 & Supp. 2009), and traditional canons of
statutory construction.  Cf. Tapps v. State, 294 S.W.3d 175, 177–78
(Tex. Crim. App. 2009) (interpreting the word felony for purposes of a sufficiency
challenge); Hardy v. State, 281 S.W.3d 414, 421–24 (Tex. Crim. App.
2009) (interpreting the words obstruction and highway for
purposes of a sufficiency challenge).

The most basic goal of statutory interpretation, and
our constitutional duty, is to determine the legislature’s collective intent.  
Whitehead v. State, 273 S.W.3d 285, 288 (Tex. Crim. App. 2008) (citing Boykin
v. State, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991)).  Under the Code
Construction Act, we are required to construe words and phrases in accordance
with their context and common usage.  Tex.
Gov’t Code Ann. § 311.011(a).  And when a word or phrase has
acquired a technical or particular meaning through judicial interpretation, we
construe the language in accordance with that interpretation.  See id. §
311.011(b); Medford v. State, 13 S.W.3d 769, 772 (Tex. Crim. App. 2000);
see also Kepner v. United States, 195 U.S. 100, 124 (1904) (“It is a
well-settled rule of construction that language used in a statute which has a
settled and well-known meaning, sanctioned by judicial decisions, is presumed
to be used in that sense by the legislative body.”).  Further, when the
legislature amends a statute but does not change a particular word or phrase,
we may presume that the legislature approved of the prior judicial
construction.  See Lebo v. State, 90 S.W.3d 324, 327–28 (Tex. Crim. App.
2002); Jordan v. State, 36 S.W.3d 871, 873–74 (Tex. Crim. App. 2001); see
also Sanders v. State, 70 Tex. Crim. 532, 537, 158 S.W. 291, 293 (1913)
(“And it is a well-recognized rule of construction that, when a Legislature in
enacting a new statute used identically the same language as that formerly used
in the old statute, it is supposed to know the construction that had been
placed on these words, and to have used the same words in the same sense as
therefore given them.”).

We must construe the meaning of the phrase lawfully
detained—and in particular, the word detained—to determine
whether it encompasses the passenger of a vehicle that has been stopped for a
traffic violation.  Courts have interpreted the phrase lawfully detained
in section 38.02 consistent with a Fourth Amendment analysis, and the Ninth
Court of Appeals in particular rejected a sufficiency challenge to a conviction
under section 38.02 when it held that the passenger of a vehicle was lawfully
detained by reason of the police stopping the vehicle for a traffic violation. 
Waalee v. State, No. 09-07-00245-CR, 2008 WL 5622656, at *3–4 (Tex.
App.—Beaumont Feb. 11, 2009, no pet.) (mem. op., not designated for
publication); see also Quick v. State, 999 S.W.2d 79, 80–81 (Tex.
App.—Houston [14th Dist.] 1999, no pet.) (sustaining a sufficiency challenge to
a conviction under section 38.02 because the defendant had not “yielded to the
officer’s show of authority” and thus was not lawfully detained at the time he
gave a false name).  We agree that such an interpretation is appropriate, and
the canons of construction outlined above support our conclusion.

When section 38.02 was enacted with the
recodification of the Penal Code in 1973, it originally criminalized providing
a false identity and failing to identify oneself to a police officer when the
person had been “lawfully stopped.”[4] 
Act of June 14, 1973, 63d Leg., R.S., ch. 399, 1973 Tex. Gen. Laws 883, 949.  The
legislature narrowed the statute in 1987 to apply only in situations when the
person had been “lawfully arrested.”  Act of June 19, 1987, 70th Leg., R.S.,
ch. 869, 1987 Tex. Gen. Laws 2944, 2944.  In 1991 the legislature struck a
middle ground—it criminalized failing to identify oneself when lawfully
arrested but also criminalized giving a false name when lawfully detained or
lawfully arrested.  See Act of June 16, 1991, 72d Leg., R.S., ch. 821,
1991 Tex. Gen. Laws 2843, 2843.  The statute was amended in 1993 and 2003, but
the legislature did not alter the basic framework—it kept the distinction
between “lawfully arrested” and “lawfully detained.”  See Act of June
20, 2003, 78th Leg., R.S., ch. 1009, § 1, 2003 Tex. Gen. Laws 2950, 2950–51;
Act of June 19, 1993, 73d Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws
3586, 3666.

The word detained is not defined in the Penal
Code, see Tex. Penal Code Ann.
§§ 1.07, 38.01 (West 2003 & Supp. 2009), but courts have used this word
frequently when discussing certain types of seizures under the Fourth
Amendment.  Consistent with the canons of statutory construction, we may look
to the meaning of detained given by courts prior to 1991, when the
legislature incorporated the language and distinguished between arrests and
detentions.  By this time, it was well-settled that there is a distinction
between these two types of seizures.  See, e.g., United States v. Brigoni-Ponce,
422 U.S. 873, 878 (1975) (noting the distinction between a “brief detention”
and a “traditional arrest”).  The Supreme Court had not “squarely answered the
question” until 2007 that a passenger in a vehicle is seized during a traffic
stop.  Brendlin, 551 U.S. at 255.  But the Court had repeatedly said
that a traffic stop causes the seizure of everyone in a vehicle.  Id. (citing
United States v. Hensley, 469 U.S. 221, 226 (1985); Berkemer v.
McCarty, 468 U.S. 420, 436–37 (1984); Colorado v. Bannister, 449
U.S. 1, 4 n.3 (1980); Delaware v. Prouse, 440 U.S. 648, 653 (1979)); see
also Randall v. State, 447 S.W.2d 912, 913 (Tex. Crim. App. 1969) (noting
that the passenger of a vehicle “was detained by reason of the check on the
license of the driver and/or to verify whether traffic offense warrants were
outstanding”).  This understanding was also prevalent when the legislature
amended the statute in 2003 but retained the distinction between arrests and
detentions.  See Whren, 517 U.S. at 809–10 (explaining that a traffic
stop results in the “detention” of all individuals in the vehicle), discussed
in Brendlin, 551 U.S. at 256; Rhodes v. State, 945 S.W.2d 115, 117
(Tex. Crim. App. 1997) (noting that “passengers in an automobile are subject to
temporary investigative detentions”); Josey v. State, 981 S.W.2d 831,
837–38 (Tex. App.—Houston [14th Dist.] 1998, pet. ref’d) (“An investigative
stop of an automobile results in the seizure of both the driver and the
passenger. . . .  Because appellant was a passenger in an automobile lawfully
detained for a traffic violation, the officers were justified in detaining
appellant for investigative purposes.”).

Resolving conflicts in witness testimony in favor of
the conviction, the evidence shows that the officers observed the vehicle in
which appellant was a passenger engage in a traffic violation, and they stopped
the vehicle.  Because the officers had an objectively reasonable basis for
making the traffic stop, appellant was lawfully detained at the inception of
the stop.  Appellant gave the false-identification statement at the very
beginning of the traffic stop, and thus, the stop had not been unreasonably
extended.  We hold that the evidence was sufficient for the trial court to
conclude beyond a reasonable doubt that appellant was lawfully detained when he
gave the officers a false name.  Accordingly, we overrule appellant’s first
issue.

Having overruled both of appellant’s issues, we
affirm the trial court’s judgment.

                                                                                    

                                                                        /s/        Leslie
B. Yates

                                                                                    Justice

 

 

Panel consists of Chief Justice Hedges and Justices Yates and
Boyce.

Publish — Tex. R. App.
P. 47.2(b).









[1]
The trial court took judicial notice of this ordinance.





[2]
But see St. George v. State, 237 S.W.3d 720, 726 n.6 (Tex. Crim. App.
2007).  In St. George, police officers repeatedly asked the passenger of
a vehicle for his name after stopping the vehicle for a traffic violation.  Id.
at 722, 726.  The passenger gave false names, and he moved to suppress his
statements because “the continued detention and investigation was illegal.”  Id.
at 726.  The Court of Criminal Appeals granted the State’s petition for
discretionary review to determine whether the court of appeals erred in
concluding that the passenger’s statements should have been suppressed because
he was “illegally detained when he was questioned by the deputies once the
initial reason for the traffic stop had ended.”  Id. at 721.  The court
affirmed and held that the officers lacked reasonable suspicion to detain the
passenger after the purpose for the traffic stop was completed.  Id. at
726.  The court also wrote that the “encounter” between the officers and the
passenger had “become non-consensual,” and the court agreed with the court of
appeals that an initial false-identification statement made by the passenger
before the purpose for the stop had been completed “was consensual in nature
because Appellant did not hesitate to provide deputies with a name and date of
birth, albeit false.”  Id. at 726 & n.6.  This language suggests
that a passenger in a vehicle is not automatically seized in a traffic stop or
that voluntarily answering an officer’s initial investigatory questions can
transform the seizure into a consensual encounter.  See Banda, 317
S.W.3d at 908 (noting that a “consensual encounter” is not a seizure under the
Fourth Amendment).  We view this characterization of the passenger’s encounter
as “consensual” as obiter dicta because it was not essential to the holding
that the traffic stop was unreasonably prolonged.  See generally Blanco v. State,
962 S.W.2d 46, 47 (Tex. Crim. App. 1998) (discussing dicta); Edwards v. Kaye,
9 S.W.3d 310, 314 (Tex. App.—Houston [14th Dist.] 1999 pet. denied) (discussing
obiter dicta and judicial dicta).  Further, the court did not discuss the Brendlin
decision, nor did the court have the benefit of the decision in Johnson,
in which the Supreme Court stated, “An officer’s inquiries into matters
unrelated to the justification for the traffic stop . . . do not convert the
encounter into something other than a lawful seizure, so long as those
inquiries do not measurably extend the duration of the stop.”  Johnson,
129 S. Ct. at 788 (emphasis added).  Finally, we note that we are bound to
follow holdings of the United States Supreme Court when interpreting the United
States Constitution.  See State v. Guzman, 959 S.W.2d 631, 633 (Tex.
Crim. App. 1998); see also Waalee v. State, No. 09-07-00245-CR,
2008 WL 5622656, at *4 (Tex. App.—Beaumont Feb. 11, 2009, no pet.) (mem. op.,
not designated for publication) (suggesting that the court of appeals in St.
George incorrectly classified the passenger–police interaction as a
consensual encounter, rather than a seizure, as the Brendlin decision
made clear).





[3]
A valid traffic stop may end with a verbal warning.  See United States v.
Chapple, No. 09-20224, 2010 WL 2817188, at *1, *3 (E.D. Mich. July 16,
2010) (reasoning that the traffic stop ended when an oral warning was given); United
States v. Magana, 544 F. Supp. 2d 560, 573 n.15 (W.D. Tex. 2008) (noting
that the officer was “required to cite, arrest, or warn [the defendant], unless
reasonable suspicion of another crime existed”); United States v.
Kirkpatrick, 5 F. Supp. 2d 1045, 1047 (D. Neb. 1998) (reasoning that the
traffic stop ended when an oral warning was given).





[4]
The word stop has a particular meaning in Fourth Amendment jurisprudence—it
means a brief detention resulting from an officer’s reasonable suspicion.  See
Terry v. Ohio, 392 U.S. 1, 10 (1968) (articulating the party’s argument,
which the Court adopted, that “the police should be allowed to ‘stop’ a person
and detain him briefly for questioning upon suspicion that he may be connected
with criminal activity”).