**Larry LaRue OVERSHOWN, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 14–09–00490–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Dec. 2, 2010.

Jules L. Laird, Houston, for appellant.

Lana S. Shadwick, Houston, for appellee.

Panel consists of Chief Justice HEDGES and Justices YATES and BOYCE.

## OPINION

LESLIE B. YATES, Justice.

After a bench trial, appellant Larry La-Rue Overshown, was convicted of falsely identifying himself to a peace officer and sentenced to 150 days in jail. Appellant challenges his conviction in two issues, arguing that the trial court erred in denying his motion to suppress and that the evidence is legally insufficient to support his conviction. We affirm.

### BACKGROUND

Shortly after midnight, Officers Roy Underwood and Brian Chebret were on patrol in a marked police car when they observed a vehicle parked in the middle of a road in an area known for drug trafficking. The vehicle was parked so that there were less than ten feet of available roadway for the free movement of vehicular traffic in violation of a city ordinance. *See* HOUS., TEX., CODE OF ORDINANCES ch. 26, art. II, § 84 (2007).[1] As the officers pulled up behind the vehicle, they noticed a man on a bicycle leaning into the driver's side window. When the man saw the officers, he rode off, and the parked vehicle began moving forward. Officer Chebret testified that he suspected a drug transaction had taken place. The officers decided to initiate a traffic stop of the vehicle, and they activated their flashing lights and pulled the vehicle over.

Appellant was a passenger in the vehicle. Both officers testified that they simultaneously approached the vehicle at the beginning of the traffic stop, with Officer Underwood speaking to the driver and Officer Chebret speaking to appellant. Officer Underwood asked some initial investigatory questions—he asked for the driver's identification and proof of insurance, and he asked for the name of the passenger. The driver said appellant's name was Larry. While Officer Underwood questioned the driver, Officer Chebret asked appellant what his name was, what they were doing, and what was "the deal with the guy on the bike." Appellant told Officer Chebret that his name was Charles Williams. Prior to verifying the driver's contact information in the computer, the officers briefly discussed the conversations they had with the vehicle's occupants, and the officers discovered that the driver and appellant had given the officers different names for appellant. Officer Chebret then returned to the passenger side of the vehicle and explained to appellant that the driver said appellant's name was Larry. Appellant immediately said that his true name was Larry Overshown. The officers ran appellant's name through the computer, discovered warrants for his arrest, and arrested him. All of this happened in less than five or ten minutes from the time the stop began. The officers let the driver go with a verbal warning.

Appellant was charged with intentionally giving a peace officer a false name while he was lawfully detained. *See* TEX. PENAL CODE ANN. § 38.02 (West Supp.2009). He moved to suppress the initial false-identification statement he gave to Officer Chebret. After the parties presented their evidence during the bench trial, appellant testified for the limited purpose of his motion to suppress. The court denied the

---

1. The trial court took judicial notice of this ordinance.

motion, found appellant guilty, and sentenced him to 150 days in the Harris County jail. This appeal followed.

## ANALYSIS

### A. Denial of the Motion to Suppress

 Appellant argues in his second issue that the trial court erred in denying his motion to suppress the initial false-identification statement because the statement was obtained as a result of an unreasonable seizure in violation of the Fourth Amendment. Specifically, he argues that the officers lacked reasonable suspicion for the initial traffic stop and the stop was unreasonably extended. We conclude that appellant was seized as a result of the traffic stop, the stop was supported by reasonable suspicion, and the stop was not unreasonably extended. Accordingly, the trial court did not err in denying the motion to suppress.

### 1. Standard of Review

 When reviewing a trial court's ruling on a motion to suppress, we view all the evidence in the light most favorable to the trial court's ruling. *State v. Garcia–Cantu,* 253 S.W.3d 236, 241 (Tex.Crim. App.2008). When the trial court does not make findings of fact, as in this case, we presume factual findings that would support the trial court's ruling if the record and reasonable inferences could support these implied findings. *Id.* We resolve conflicting testimony in favor of the trial

court's ruling because the trial court is the sole judge of the credibility and demeanor of witnesses. *See id.* We review de novo, however, the issue of whether the police conduct in question amounts to an unreasonable seizure under the Fourth Amendment because this issue requires the application of legal principles to a specific set of facts. *Id.; Banda v. State,* 317 S.W.3d 903, 907 (Tex.App.-Houston [14th Dist.] 2010, no pet. h.).

### 2. Reasonable Seizure of a Passenger During a Traffic Stop

 The Fourth Amendment to the United States Constitution protects individuals from unreasonable seizures, and oral statements obtained as a result of an unreasonable seizure may be suppressed. *E.g., Wong Sun v. United States,* 371 U.S. 471, 484–85, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). When police officers signal that a driver should stop a moving vehicle, and in response the driver actually stops the vehicle, then the driver and all passengers inside the vehicle have been seized under the Fourth Amendment. *Arizona v. Johnson,* —— U.S. ——, 129 S.Ct. 781, 784, 788, 172 L.Ed.2d 694 (2009); *Brendlin v. California,* 551 U.S. 249, 257, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007); *see also Brower v. County of Inyo,* 489 U.S. 593, 597, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989) (noting that a police car's flashing lights and pursuit constitute a "show of authority" required for a Fourth Amendment seizure).[2]

**2.** *But see St. George v. State,* 237 S.W.3d 720, 726 n. 6 (Tex.Crim.App.2007). In St. George, police officers repeatedly asked the passenger of a vehicle for his name after stopping the vehicle for a traffic violation. *Id.* at 722, 726. The passenger gave false names, and he moved to suppress his statements because "the continued detention and investigation was illegal." *Id.* at 726. The Court of Criminal Appeals granted the State's petition for discretionary review to determine whether the court of appeals erred in concluding that

the passenger's statements should have been suppressed because he was "illegally detained when he was questioned by the deputies once the initial reason for the traffic stop had ended." *Id.* at 721. The court affirmed and held that the officers lacked reasonable suspicion to detain the passenger after the purpose for the traffic stop was completed. *Id.* at 726. The court also wrote that the "encounter" between the officers and the passenger had "become non-consensual," and the court agreed with the court of appeals that an ini-

The seizure continues for the duration of the traffic stop, and the seizure terminates when the police inform the driver and passengers that they are free to leave. *Johnson*, 129 S.Ct. at 788.

■ A traffic stop is reasonable when there exists either probable cause to believe that a traffic violation has occurred, *Whren v. United States*, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), or reasonable suspicion that someone in the vehicle is committing or has committed a criminal offense, *see Johnson*, 129 S.Ct. at 784. We evaluate the reasonableness of a traffic stop based solely on an objective standard—an officer's subjective intent plays no role in our determination of whether a traffic stop was reasonable. *Whren*, 517 U.S. at 812–13, 116 S.Ct. 1769; *see also Garcia v. State*, 827 S.W.2d 937, 944 (Tex.Crim.App.1992) ("[A]n officer's subjective intent is relevant only to a credibility determination of his stated reasons for stopping or arresting an individual."). Accordingly, police may validly stop a vehicle for a traffic violation so long as the stop would be objectively reasonable, regardless of whether the stop is a mere pretext to investigate unrelated criminal conduct. *Garcia*, 827 S.W.2d at 944.

■ But a traffic stop that is objectively reasonable at its inception may develop into a Fourth Amendment violation if the manner of its execution is unreasonable. *Illinois v. Caballes*, 543 U.S. 405, 407, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005). Thus, a traffic stop made for the purpose of "issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." *Id.* This requirement, however, does not prohibit an officer from inquiring into matters unrelated to the purpose of the traffic stop so long as the stop is not unreasonably extended. *Johnson*, 129 S.Ct. at 788; *Caballes*, 543 U.S. at 407, 125 S.Ct. 834; *Kothe v. State*, 152 S.W.3d 54, 63–65 (Tex.Crim.App.2004). For example, a traffic stop may last as long as reasonably necessary to check the driver's license and car registration and to conduct a computer check of that information. *Kothe*, 152 S.W.3d at 63. But even if a stop becomes unlawful after its incep-

---

tial false-identification statement made by the passenger before the purpose for the stop had been completed "was consensual in nature because Appellant did not hesitate to provide deputies with a name and date of birth, albeit false." *Id.* at 726 & n. 6. This language suggests that a passenger in a vehicle is not automatically seized in a traffic stop or that voluntarily answering an officer's initial investigatory questions can transform the seizure into a consensual encounter. *See Banda*, 317 S.W.3d at 908 (noting that a "consensual encounter" is not a seizure under the Fourth Amendment). We view this characterization of the passenger's encounter as "consensual" as obiter dicta because it was not essential to the holding that the traffic stop was unreasonably prolonged. *See generally Blanco v. State*, 962 S.W.2d 46, 47 (Tex.Crim.App.1998) (discussing dicta); *Edwards v. Kaye*, 9 S.W.3d 310, 314 (Tex.App.-Houston [14th Dist.] 1999 pet. denied) (discussing obiter dicta and judicial dicta). Further, the court did not discuss the *Brendlin* decision, nor did the court have the benefit of the decision in Johnson, in which the Supreme Court stated, "An officer's inquiries into matters unrelated to the justification for the traffic stop ... do not convert the encounter into something other than a *lawful seizure*, so long as those inquiries do not measurably extend the duration of the stop." *Johnson*, 129 S.Ct. at 788 (emphasis added). Finally, we note that we are bound to follow holdings of the United States Supreme Court when interpreting the United States Constitution. *See State v. Guzman*, 959 S.W.2d 631, 633 (Tex.Crim.App.1998); *see also Waalee v. State*, No. 09–07–00245–CR, 2008 WL 5622656, at *4 (Tex.App.-Beaumont Feb. 11, 2009, no pet.) (mem. op., not designated for publication) (suggesting that the court of appeals in *St. George* incorrectly classified the passenger-police interaction as a consensual encounter, rather than a seizure, as the *Brendlin* decision made clear).

tion, only the evidence obtained because of the Fourth Amendment violation—that is, after the stop became unlawful—may be suppressed as "fruit of the poisonous tree." *See, e.g., Wong Sun,* 371 U.S. at 485, 83 S.Ct. 407 (explaining that the exclusionary rule applies to evidence "obtained either during or as a direct result of" a Fourth Amendment violation).

Here, appellant was a passenger in a moving vehicle. Officer Underwood testified that the police car's emergency lights were activated, and both officers said that they initiated a traffic stop of the vehicle. The driver stopped the vehicle, and appellant remained inside when Officer Chebret approached the vehicle and asked investigatory questions. Accordingly, appellant was seized.

 The officers testified that they observed the car prior to the stop as it was parked in a street, which caused less than ten feet of the roadway to be available for the free movement of vehicular traffic. This violated a city ordinance and provided the officers an objectively reasonable basis for initiating the stop, regardless of their subjective belief that the occupants of the vehicle might have been engaged in drug activity. Appellant criticizes the officers' decision to give the driver only a verbal warning, rather than a written citation. While the trial court was free to consider the lack of a written citation or ticket in determining the credibility of witness testimony, it does not mean that the officers lacked reasonable suspicion as a matter of law. *See Duff v. State,* 546 S.W.2d 283, 286 (Tex.Crim.App.1977) (refusing to hold that the traffic stop was unlawful when the

State did not produce a copy of the ticket because the officer testified about the purpose for the stop and the trial judge "was present and observed the witnesses' demeanor" and could have found that the officer was telling the truth).[3] Because the stop was initiated after the officers observed a traffic violation, the stop was reasonable in its inception and did not violate the Fourth Amendment.

Finally, both officers testified that the false-identification statement was made during the initial questioning of the driver. At the time appellant gave the false identification, Officer Underwood was obtaining the driver's identification and insurance information. This occurred immediately after the traffic stop began and prior to running the driver's information through the computer. Regardless of what occurred after the statement was given or the total length of the stop (estimated by the officers to be five or ten minutes), the statement was given before the traffic stop was completed. Asking appellant for his name did not unreasonably extend the duration of the stop. Thus, the statement was not obtained as a result of a Fourth Amendment violation and should not be suppressed. We overrule appellant's second issue.

## B. Sufficiency of the Evidence

 In his first issue, appellant argues that the evidence is legally insufficient to support his conviction. Specifically, he contends that he was not "detained" at the time he gave the false-identification state-

---

3. A valid traffic stop may end with a verbal warning. *See United States v. Chapple,* No. 09–20224, 2010 WL 2817188, at *1, *3 (E.D.Mich. July 16, 2010) (reasoning that the traffic stop ended when an oral warning was given); *United States v. Magana,* 544 F.Supp.2d 560, 573 n. 15 (W.D.Tex.2008)

(noting that the officer was "required to cite, arrest, or warn [the defendant], unless reasonable suspicion of another crime existed"); *United States v. Kirkpatrick,* 5 F.Supp.2d 1045, 1047 (D.Neb.1998) (reasoning that the traffic stop ended when an oral warning was given).

ment, and even if he was detained, this detention was not "lawful."

### 1. Standard of Review

When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict to determine whether the fact finder was rationally justified in finding guilt beyond a reasonable doubt. *Brooks v. State,* 323 S.W.3d 893, 898–900 (Tex.Crim.App.2010); *Williams v. State,* 235 S.W.3d 742, 750 (Tex.Crim.App.2007). We do not substitute our judgment for that of the fact finder by re-evaluating the weight and credibility of the evidence, and we defer to the fact finder's resolution of conflicting evidence unless the resolution is not rational. *Brooks,* 323 S.W.3d at 901–02 & n. 19, 905–07; *Williams,* 235 S.W.3d at 750. We must determine as a matter of law whether the evidence presented actually constitutes a criminal offense. *Williams,* 235 S.W.3d at 750.

### 2. Meaning of the Phrase *Lawfully Detained*

Appellant was convicted of intentionally giving a false name to a police officer while being lawfully detained. The statute provides as follows: "A person commits an offense if he intentionally gives a false or fictitious name ... to a peace officer who has ... lawfully detained the person." TEX. PENAL CODE ANN. § 38.02(b) (West Supp.2009). When interpreting a statute for the purpose of determining whether the evidence presented actually constitutes a criminal offense, we look to the Code Construction Act, TEX. GOV'T CODE ANN. §§ 311.001–034 (West 2005 & Supp.2009), and traditional canons of statutory construction. *Cf. Tapps v. State,* 294 S.W.3d 175, 177–78 (Tex.Crim.App.2009) (interpreting the word *felony* for purposes of a sufficiency challenge); *Hardy v. State,* 281 S.W.3d 414, 421–24 (Tex.Crim.App.2009) (interpreting the words *obstruction* and

*highway* for purposes of a sufficiency challenge).

The most basic goal of statutory interpretation, and our constitutional duty, is to determine the legislature's collective intent. *Whitehead v. State,* 273 S.W.3d 285, 288 (Tex.Crim.App.2008) (citing *Boykin v. State,* 818 S.W.2d 782, 785 (Tex.Crim.App. 1991)). Under the Code Construction Act, we are required to construe words and phrases in accordance with their context and common usage. TEX. GOV'T CODE ANN. § 311.011(a). And when a word or phrase has acquired a technical or particular meaning through judicial interpretation, we construe the language in accordance with that interpretation. *See id.* § 311.011(b); *Medford v. State,* 13 S.W.3d 769, 772 (Tex.Crim.App.2000); *see also Kepner v. United States,* 195 U.S. 100, 124, 24 S.Ct. 797, 49 L.Ed. 114 (1904) ("It is a well-settled rule of construction that language used in a statute which has a settled and well-known meaning, sanctioned by judicial decisions, is presumed to be used in that sense by the legislative body."). Further, when the legislature amends a statute but does not change a particular word or phrase, we may presume that the legislature approved of the prior judicial construction. *See Lebo v. State,* 90 S.W.3d 324, 327–28 (Tex.Crim.App.2002); *Jordan v. State,* 36 S.W.3d 871, 873–74 (Tex.Crim. App.2001); *see also Sanders v. State,* 70 Tex.Crim. 532, 537, 158 S.W. 291, 293 (1913) ("And it is a well-recognized rule of construction that, when a Legislature in enacting a new statute used identically the same language as that formerly used in the old statute, it is supposed to know the construction that had been placed on these words, and to have used the same words in the same sense as therefore given them.").

We must construe the meaning of the phrase *lawfully detained*—and in particular, the word *detained*—to determine

whether it encompasses the passenger of a vehicle that has been stopped for a traffic violation. Courts have interpreted the phrase *lawfully detained* in section 38.02 consistent with a Fourth Amendment analysis, and the Ninth Court of Appeals in particular rejected a sufficiency challenge to a conviction under section 38.02 when it held that the passenger of a vehicle was lawfully detained by reason of the police stopping the vehicle for a traffic violation. *Waalee v. State*, No. 09–07–00245–CR, 2008 WL 5622656, at *3–4 (Tex.App.-Beaumont Feb. 11, 2009, no pet.) (mem. op., not designated for publication); *see also Quick v. State*, 999 S.W.2d 79, 80–81 (Tex.App.-Houston [14th Dist.] 1999, no pet.) (sustaining a sufficiency challenge to a conviction under section 38.02 because the defendant had not "yielded to the officer's show of authority" and thus was not lawfully detained at the time he gave a false name). We agree that such an interpretation is appropriate, and the canons of construction outlined above support our conclusion.

When section 38.02 was enacted with the recodification of the Penal Code in 1973, it originally criminalized providing a false identity and failing to identify oneself to a police officer when the person had been "lawfully stopped." [4] Act of June 14, 1973, 63d Leg., R.S., ch. 399, 1973 Tex. Gen. Laws 883, 949. The legislature narrowed the statute in 1987 to apply only in situations when the person had been "lawfully arrested." Act of June 19, 1987, 70th Leg., R.S., ch. 869, 1987 Tex. Gen. Laws 2944, 2944. In 1991 the legislature struck a middle ground—it criminalized failing to identify oneself when lawfully arrested but also criminalized giving a false name when

lawfully detained or lawfully arrested. *See* Act of June 16, 1991, 72d Leg., R.S., ch. 821, 1991 Tex. Gen. Laws 2843, 2843. The statute was amended in 1993 and 2003, but the legislature did not alter the basic framework—it kept the distinction between "lawfully arrested" and "lawfully detained." *See* Act of June 20, 2003, 78th Leg., R.S., ch. 1009, § 1, 2003 Tex. Gen. Laws 2950, 2950–51; Act of June 19, 1993, 73d Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3586, 3666.

The word *detained* is not defined in the Penal Code, *see* Tex. Penal Code Ann. §§ 1.07, 38.01 (West 2003 & Supp.2009), but courts have used this word frequently when discussing certain types of seizures under the Fourth Amendment. Consistent with the canons of statutory construction, we may look to the meaning of *detained* given by courts prior to 1991, when the legislature incorporated the language and distinguished between arrests and detentions. By this time, it was well-settled that there is a distinction between these two types of seizures. *See, e.g., United States v. Brignoni–Ponce*, 422 U.S. 873, 878, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975) (noting the distinction between a "brief detention" and a "traditional arrest"). The Supreme Court had not "squarely answered the question" until 2007 that a passenger in a vehicle is seized during a traffic stop. *Brendlin*, 551 U.S. at 255, 127 S.Ct. 2400. But the Court had repeatedly said that a traffic stop causes the seizure of everyone in a vehicle. *Id.* (citing *United States v. Hensley*, 469 U.S. 221, 226, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985); *Berkemer v. McCarty*, 468 U.S. 420, 436–

4. The word *stop* has a particular meaning in Fourth Amendment jurisprudence—it means a brief detention resulting from an officer's reasonable suspicion. *See Terry v. Ohio*, 392 U.S. 1, 10, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (articulating the party's argument, which the Court adopted, that "the police should be allowed to 'stop' a person and detain him briefly for questioning upon suspicion that he may be connected with criminal activity").

37, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984); *Colorado v. Bannister,* 449 U.S. 1, 4 n. 3, 101 S.Ct. 42, 66 L.Ed.2d 1 (1980); *Delaware v. Prouse,* 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979)); *see also Randall v. State,* 447 S.W.2d 912, 913 (Tex. Crim.App.1969) (noting that the passenger of a vehicle "was detained by reason of the check on the license of the driver and/or to verify whether traffic offense warrants were outstanding"). This understanding was also prevalent when the legislature amended the statute in 2003 but retained the distinction between arrests and detentions. *See Whren,* 517 U.S. at 809–10, 116 S.Ct. 1769 (explaining that a traffic stop results in the "detention" of all individuals in the vehicle), *discussed in Brendlin,* 551 U.S. at 256, 127 S.Ct. 2400; *Rhodes v. State,* 945 S.W.2d 115, 117 (Tex.Crim.App. 1997) (noting that "passengers in an automobile are subject to temporary investigative detentions"); *Josey v. State,* 981 S.W.2d 831, 837–38 (Tex.App.-Houston [14th Dist.] 1998, pet. ref'd) ("An investigative stop of an automobile results in the seizure of both the driver and the passenger.... Because appellant was a passenger in an automobile lawfully detained for a traffic violation, the officers were justified in detaining appellant for investigative purposes.").

Resolving conflicts in witness testimony in favor of the conviction, the evidence shows that the officers observed the vehicle in which appellant was a passenger engage in a traffic violation, and they stopped the vehicle. Because the officers had an objectively reasonable basis for making the traffic stop, appellant was lawfully detained at the inception of the stop. Appellant gave the false-identification statement at the very beginning of the traffic stop, and thus, the stop had not been unreasonably extended. We hold that the evidence was sufficient for the trial court to conclude beyond a reasonable doubt that appellant was lawfully detained when he gave the officers a false name. Accordingly, we overrule appellant's first issue.

Having overruled both of appellant's issues, we affirm the trial court's judgment.