

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-14-00142-CR

_____

DONNY JOE CURRY, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law No. 1
Hunt County, Texas
Trial Court No. CR1301628

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Chief Justice Morriss

## MEMORANDUM OPINION

When Donny Joe Curry was subjected to a traffic stop by Commerce Police Officer Samantha Manrique, Curry had a consistent theme for why he refused to cooperate or provide more than his first name, why his vehicle had no rear lights, and why his vehicle displayed only homemade items in place of a proper license plate, registration sticker, and inspection sticker. Curry claimed to be sovereign and, therefore, not subject to the law or any governmental authority.

This appeal comes from Curry's conviction for failure to identify, resulting from the traffic stop.[1] Curry appeals, arguing that (1) the evidence supporting his conviction for failure to identify is legally insufficient, and (2) the trial court imposed an illegal sentence.

We reverse the trial court's judgment and render a judgment of acquittal because the evidence supporting Curry's conviction is legally insufficient to demonstrate that Curry was arrested before refusing to identify himself. Due to our ruling on Curry's evidentiary complaint, his complaint about his sentence is moot.

---

[1]In companion cases 06-14-00139-CR through 06-14-00142-CR, Curry appeals from convictions all prosecuted against him as a result of the traffic stop, each resulting in an appeal currently pending before this Court. Curry was charged with resisting arrest (our cause number 06-14-00139-CR), failure to maintain proof of financial responsibility (our cause number 06-14-00140-CR), failure to display/no motor vehicle inspection (our cause number 06-14-00141-CR), and failure to identify (our cause number 06-14-00142-CR). After a bench trial, he was found guilty on all charges. For the offense of resisting arrest, the trial court sentenced Curry to 275 days' confinement, assessed a $250.00 fine, ordered Curry to pay court costs, and gave him credit for eighty-two days of time served. For each of the remaining three offenses, the court fined him $250.00, gave him credit for eighty-two days of time served, which fully satisfied the fine, and assessed him court costs, but in the final judgments, there are handwritten notations that he was also sentenced to 275 days' confinement for each of the charges. Three of the appeals are being affirmed this day—two of which are being modified to delete the 275-day jail sentence—but, because no evidence shows that Curry was under arrest at any time before he failed to identify, the conviction for failure to identify is being reversed.

Manrique stopped Curry's blue Buick LeSabre after it swerved and nearly hit the median and after she noticed that the car also had a broken taillight and a handmade placard instead of a license plate.

When Manrique spoke to Curry, he said he had neither a driver's license nor insurance. When asked for his name, Curry said his first name was "Donny," refused to give his last name because "it was a family name," and refused to provide any further identification such as his date of birth. After Curry gave Manrique some paperwork claiming Curry as a sovereign citizen, Manrique returned to her patrol car and called for backup units.

Lieutenant Mike Pehl and Sergeant Steve Scott arrived on scene as backup. Pehl approached the car, saw that Curry had a briefcase in his lap, and ordered Curry to produce his driver's license, but Curry refused. Pehl informed Curry that failing to identify himself to a peace officer after having been lawfully stopped was a violation of State law.[2] When Curry refused to produce his driver's license, Pehl opened the driver's door. Curry then stated that he wanted to show Pehl something, and he reached into the briefcase. In response, Pehl drew his gun, pointed it at Curry, and ordered Curry to show his hands. Curry immediately pulled his hands out of the briefcase and held them up in the air. Pehl holstered his gun and tried unsuccessfully to pull Curry out of the car.

Pehl then asked for and received Manrique's taser and warned Curry he would be tased if he did not get out of the car. When Curry "start[ed] to refuse and argue" with Pehl, Pehl tased

---

[2]Though he was in plain clothes, Pehl was wearing his badge and police identification on a chain around his neck. Pehl testified that he told Curry his name, rank, and that he was employed by the Commerce Police Department.

3

Curry with a "drive-stun" to the ribcage. Pehl testified that he still could not pull Curry from the car because Curry had locked his right arm into the steering wheel. Pehl used the taser on Curry a second and third time, but still could not remove him from the car. Pehl handed the taser to Scott, who was on the passenger side of the car. Scott tased Curry twice, "driv[ing] [Curry] out of the vehicle." Pehl then grabbed Curry around the chest and, with Scott's help, handcuffed him and placed him in custody.

During an inventory search of the car, performed after Curry was arrested, Manrique found Curry's Texas-issued "ID or driver's license"[3] as well as his Social Security card.

Curry contends that the evidence is legally insufficient to support his conviction for failure to identify.

In evaluating legal sufficiency, we review all the evidence in the light most favorable to the verdict to determine whether any rational fact-finder could have found beyond a reasonable doubt that Curry was guilty of failure to identify. *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd) (citing *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not

---

[3]Manrique did not remember whether the driver's license was valid.

unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

A person commits the offense of failure to identify if:

(a) . . . he intentionally refuses to give his name, residence address, or date of birth to a peace officer who has lawfully arrested the person and requested the information . . . [or]

(b) . . . he intentionally gives a false or fictitious name, residence address, or date of birth to a peace officer who has:

 (1) lawfully arrested the person;
 (2) lawfully detained the person; or
 (3) requested the information from a person that the peace officer has good cause to believe is a witness to a criminal offense.

TEX. PENAL CODE ANN. § 38.02 (West 2011). The State contends that Curry failed to give his name under Section 38.02(a).[4] Curry contends that the evidence is insufficient because "at no point before Officer Pehl [t]asered [him] and removed him from the car does Pehl or [the] other officer definitively indicate that he is under arrest."

Manrique testified that, after stopping Curry's car, Curry identified himself only as "Donny" and refused to provide a driver's license or proof of insurance. She further testified that, when asked for further personal information, Curry gave Manrique some paperwork that identified him as a sovereign citizen and listed several reasons why he was not required to have a driver's license or insurance. After Pehl and Scott arrived, they removed Curry from his car and took him

---

[4]There is neither a contention nor evidence that Curry intentionally gave a false or fictitious name, residence address, or date of birth. Therefore, subsection (b) is not at issue in this case.

5

into custody. On direct examination, the State questioned Manrique about the timing of Curry's arrest as follows:

> Q.    Once they got him out, did -- was it a continued scuffle? Did they arrest him pretty quickly? Did they detain him pretty quickly?
>
> A.    Mr. Curry continued to resist, flailing about and screaming, and Lieutenant Pehl had held onto Mr. Curry from his torso area and got one handcuff on, and Detective Scott was able to get the other handcuff on, and he was placed into custody at that time.

Pehl testified that he walked up to the driver's window and asked for Curry's driver's license. On cross-examination, Pehl admitted that he asked for Curry's name before opening the driver's door. When Curry refused to produce his driver's license, Pehl opened the driver's door and ordered him out of the car. Curry was tased several times, forcibly removed from the car, and then handcuffed and placed in the patrol car.

Scott's testimony was consistent with that of Pehl regarding the traffic stop and the questioning of Curry. The State asked Scott about the point in the encounter when Curry was arrested:

> Q.    At any point -- or once you got him out of the car, did you arrest him?
>
> A.    Yes, we did.
>
> Q.    And what did you do next?
>
> A.    I maintained the location. After an officer came and transported, I stayed with Officer Manrique while she did the initial inventory of the vehicle.

The State contends that despite the requests of Manrique and Pehl for identifying information, Curry "intentionally refused to give his name while he was lawfully *detained*."

6

(Emphasis added).[5] However, under Section 38.02(a), a person is required to provide identifying information to a peace officer only after that person has been lawfully arrested.[6] TEX. PENAL CODE ANN. § 38.02(a).

Here, there is no evidence that Curry was under arrest at the time he was asked for, and refused to provide, his identifying information. *See id.*; *see State v. Stevenson*, 958 S.W.2d 824, 828 n.6 (Tex. Crim. App. 1997). Rather, Manrique, Scott, and Pehl testified that Curry was not under arrest until he was forcibly removed from the car, which was after the officers asked for his identifying information. Therefore, the evidence supporting Curry's conviction under Section 38.02(a) is legally insufficient. Accordingly, we sustain this point of error, reverse the

---

[5]The State also cites various authorities discussing the detention of the driver and passengers in the context of a traffic stop. *See Arizona v. Johnson*, 555 U.S. 323, 327 (2009); *Navarette v. California*, 134 S.Ct. 1683, 1687 (2014); *Overshown v. State*, 329 S.W.3d 201, 207 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (under Section 38.02(b) of Texas Penal Code, lawful detention extends to vehicle passengers).

[6]When Section 38.02 of the Texas Penal Code was enacted with the recodification of the Penal Code in 1973, it originally criminalized providing a false identity and failing to identify oneself to a police officer when the person had been "lawfully stopped." Act of June 14, 1973, 63d Leg., R.S., ch. 399, § 1 1973 Tex. Gen. Laws 883, 949. The Legislature narrowed the statute in 1987 to apply only in situations when the person had been "lawfully arrested." Act of June 19, 1987, 70th Leg., R.S., ch. 869, § 1, 1987 Tex. Gen. Laws 2944, 2944. In 1991, the Legislature struck a middle ground—it criminalized failing to identify oneself when lawfully arrested but also criminalized giving a false name when lawfully detained or lawfully arrested. *See* Act of June 16, 1991, 72d Leg., R.S., ch. 821, § 4, 1991 Tex. Gen. Laws 2843, 2843. The statute was amended in 1993 and 2003, but the legislature did not alter the basic framework—it kept the distinction between "lawfully arrested" and "lawfully detained." *See* Act of June 20, 2003, 78th Leg., R.S., ch. 1009, § 1, 2003 Tex. Gen. Laws 2950, 2950–51; Act of June 19, 1993, 73d Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3586, 3666.

7

trial court's judgment, and render a judgment of acquittal. Due to our ruling on this point of error,

Curry's point of error claiming an illegal sentence is moot.


                                        Josh R. Morriss, III
                                        Chief Justice

Date Submitted:     April 8, 2015
Date Decided:       April 24, 2015

Do Not Publish