**Lavoshae WYGAL, Appellant**

v.

**The STATE of Texas, Appellee**

**NO. 01-15-00771-CR**

Court of Appeals of Texas,
Houston (1st Dist.).

Opinion issued July 11, 2017

Cheri Duncan, Assistant Public Defender, 1201 Franklin, 13th Floor, Houston, TX 77002, for Appellant.

Kim Ogg, District Attorney—Harris County, 1201 Franklin, Suite 600, Houston, TX 77002, Travis Dunlap, Assistant District Attorney, Harris County, Texas, 1201 Franklin, Suite 600, Houston, TX 77002, for Appellee.

Panel consists of Justices Keyes, Higley, and Lloyd.

## OPINION

Evelyn V. Keyes, Justice

A jury convicted appellant, Lavoshae Wygal, of the Class B misdemeanor offense of failure to identify,[1] and the trial court assessed her punishment at six days' confinement in the Harris County Jail. In one issue, appellant contends that the State failed to present sufficient evidence that she gave a false name and birthdate to police officers and that the officers lawfully detained her.

We affirm.

## Background

On August 28, 2014, Houston Police Department ("HPD") Officer D. Morse attempted to execute an arrest warrant at a house in southeast Houston. When Officer Morse stopped at the house, a vehicle driven by the subject of the arrest warrant, a

---

1. *See* TEX. PENAL CODE ANN. § 38.02(b)(2) (West 2011).

man named Darryl Ross, quickly reversed backwards into the driveway, and Ross jumped out of the car and "took off running" behind the house. Officer Morse attempted to follow Ross, but there were three pit bulls chained up in the backyard, and they prevented him from going further into the yard. Officer Morse did not see where Ross went.

At this point, appellant, who lived in the house, walked out of the back door and asked what was happening. Officer Morse explained that a felony suspect "had just bailed out of a car and ran to [appellant's] backyard," and that was why he had come into her driveway. Officer Morse mentioned Ross's name, and appellant stated that she did not know the name and that he had not run into her house. When Officer Morse asked appellant if she knew who owned the car Ross had been driving, she said that it was her car. She gave no explanation for why a man she did not know was driving her car.

Because Officer Morse did not know where Ross had gone, he detained appellant and placed her, without handcuffs, in the backseat of his patrol car. Officer Morse testified that he did this for her safety because he did not want to put her in a dangerous situation, and he also did this for his safety because he did not know appellant and he did not know if appellant was related to Ross. Officer Morse waited about an hour and a half for backup officers to arrive to create a perimeter and bring a canine unit, and while he was waiting he occasionally spoke with appellant. He repeatedly explained that he was looking for a suspect, and appellant repeatedly stated that she did not know the

suspect. Officer Morse testified that he asked appellant for her name, and she responded by saying, "Shay Marie." Officer Morse also asked her for her birthdate, and she told him that her birthdate was February 18, 1994. Officer Morse later learned that this information was incorrect and that appellant's correct date of birth was November 20, 1992.[2] Officer Morse asked appellant for identification, such as her driver's license, but she did not provide him with any.

Officer M. Glover testified that, around 10:30 a.m. on August 28, 2014, he had been assigned to execute an arrest warrant for Ross at a particular address. When the State asked Officer Glover who lived at this address, Glover responded:

> To my knowledge that at the time we knew that the suspect [Ross] lived there, we believe with a girlfriend, but we weren't exactly sure who the homeowner was at the time. We just knew that the suspect lived there, and we had information about a blue car that he was known to drive and that car ended up being in the drive.

After Officer Morse radioed that Ross had abandoned the car he had been driving, Officer Glover, who was driving down a nearby street, saw Ross run in his direction and then back towards the house once he saw Glover's patrol car. Officer Glover believed that Ross might have gone into the house, so he requested backup to set up a perimeter around the house.

A canine unit tracked Ross's scent back to the house,[3] and that was where Officer Glover met appellant, who was then detained in a patrol car. At that point, Officer Glover did not know who appellant was or

2. Officer Morse acknowledged that his supplement to the offense report stated that appellant told him that her birthdate was February 18, 1984. This date was also not accurate.

3. Officers later arrested Ross at a different location.

who she was relative to Ross. Officer Glover searched the house to look for Ross, and he found appellant's school identification card, which listed her name as "Lavoshae Wygal." Appellant never told Officer Glover her date of birth. Officer Glover testified that he did not speak much with appellant at the scene, but, based on conversations that occurred at the scene, the officers believed that Ross was appellant's boyfriend.

Officer O. Pardo also arrived at the scene after he heard on the radio that a foot chase was occurring. Appellant was placed in the backseat of Officer Pardo's patrol car, and Officer Pardo asked her for her name and date of birth. She responded that her name was "Shay Marie" and that her birthdate was February 18, 1994. Officer Pardo performed a computer search using this information, which yielded no results. Officer Pardo asked appellant again for her information, but appellant was upset and did not cooperate. He later received appellant's school identification card from another officer, and, when he used that information, his computer pulled up appellant's driver's license, which showed her correct identifying information.

Appellant testified on her own behalf. She stated that she was a full-time university student, and on August 28, 2014, she was awakened "very early" by patrol lights shining through her bedroom window. She heard her dogs barking in the backyard, and she peeked out the back door to see what was going on. Officer Morse grabbed her by the arm and pulled her out of the house. Appellant asked him what was going on, but he did not say anything to her and just put her in the back of his patrol car. She testified that she sat in the back of Officer Morse's patrol car for at least two hours and he never told her why she was being detained.

Appellant stated that around fifteen police officers arrived on the scene, and Officer Glover took her out of Officer Morse's patrol car and placed her in handcuffs without any explanation. Appellant then waited in the back of the patrol car, handcuffed, for another two hours without anyone explaining why she was being detained. She testified that no one spoke to her about a felony arrest warrant or a man named Darryl Ross, and she stated that she did not know a Darryl Ross, that he was not her boyfriend, and that he did not live at her address. Appellant testified that the officers brought her to the back door and asked her permission to search the house, and she responded that she could not give them permission because she did not own the house.

Appellant also testified that neither Officer Morse nor Officer Glover asked her for her name or birthdate. Officer Pardo did ask her for her birthdate, and she told him that her birthdate was November 20, 1992. Appellant testified that Officer Pardo wrote "11/20/92" down on her school identification card and then used that information to perform a computer search.[4] The officers allowed appellant to go inside the house to change clothing, and then they drove her to a police substation. Appellant stated that none of the officers ever told her why they had arrested her. She testified that she never gave any of the officers a false name or a false date of birth.

The jury found appellant guilty of the offense of failure to identify. The trial court assessed her punishment at six days'

---

4. Officer Pardo testified that he did not recall writing down appellant's date of birth on her student identification card.

confinement, with credit for time already served. This appeal followed.

### Sufficiency of the Evidence

In her sole issue, appellant contends that the State failed to present sufficient evidence that she gave a false name and birthdate to Officer Morse and that Morse lawfully detained her.

#### A. Standard of Review

When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict to determine whether any rational fact finder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Adames v. State*, 353 S.W.3d 854, 859 (Tex. Crim. App. 2011) (holding that *Jackson* standard is only standard to use when determining sufficiency of evidence). The jurors are the exclusive judges of the facts and the weight to be given to the testimony. *Bartlett v. State*, 270 S.W.3d 147, 150 (Tex. Crim. App. 2008). The jury, as the sole judge of credibility, may accept one version of the facts and reject another, and it may reject any part of a witness's testimony. *See Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); *see also Henderson v. State*, 29 S.W.3d 616, 623 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) (stating jury can choose to disbelieve witness even when witness's testimony is uncontradicted).

We may not re-evaluate the weight and credibility of the evidence or substitute our judgment for that of the fact finder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We afford almost complete deference to the jury's credibility determinations. *See Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008). We resolve any inconsistencies in the evidence in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000); *see also Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) ("When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination.").

#### B. False and Fictitious Name or Date of Birth

To establish that appellant committed the offense of failure to identify, the State had to prove that appellant intentionally gave a false and fictitious name and date of birth to Officer Morse, who had lawfully detained appellant and whom appellant knew to be a peace officer. *See* TEX. PENAL CODE ANN. § 38.02(b)(2) (West 2011); *Jones v. State*, 396 S.W.3d 558, 563 (Tex. Crim. App. 2013) (stating that purpose of section 38.02 "is to ensure that [officers] receive accurate information by criminalizing the act of providing law enforcement with false identification"). A person acts intentionally, or with intent, "with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result." TEX. PENAL CODE ANN. § 6.03(a) (West 2011).

Section 38.02 does not define "false" or "fictitious." In construing this section, the Austin Court of Appeals has considered dictionary definitions in determining the ordinary and common meanings of "false" and "fictitious," and our sister court has stated, "A review of such authorities consistently reflects that 'false' commonly means 'not true' and may encompass an intent to deceive. 'Fictitious,' in common usage, often refers to something that is 'not real' or 'imaginary,' and likewise may include an intent to deceive." *Smith v. State*, 363 S.W.3d 761, 775 (Tex. App.—

Austin 2012, pet. ref'd). The Austin Court also found it "significant that the statutorily prohibited conduct (giving a 'false' or 'fictitious' name under the circumstances described) is immediately preceded by the word 'intentionally,' which denotes that the culpable mental state is connected with the conduct itself." *Id.* at 776. The Austin Court concluded that to sustain a conviction for failure to identify, the State must present sufficient evidence that it was the defendant's conscious objective or desire to give the officer "a 'false' name (i.e., one that is not 'true' to deceive [the officer]) or a 'fictitious' name (one that is 'imaginary' or 'not real' to deceive [the officer])." *Id.* The court noted that "the 'falsity' or 'fictitiousness' of a name will turn largely on the speaker's intent and the context in which the name is used." *Id.*

In *Smith*, the defendant, Janeen Smith, identified herself to a police officer as "Jay Smith." *Id.* at 764. At a bench trial for the offense of failure to identify, Smith argued that she did not give a false or fictitious name to officers and testified that she had used "Jay Smith" as a nickname for approximately seventeen years and that she had business cards and checks issued to her in that name. *Id.* at 766. She stated that the community associated that name with her, but she acknowledged that the name on her driver's license and vehicle registration was "Janeen Smith," not "Jay Smith." *Id.* In determining that sufficient evidence supported the trial court's finding that Smith gave a false or fictitious name, the Austin Court noted that Smith incorrectly informed the officer that "Jay Smith" was the name on her driver's license and that Smith had outstanding warrants under her legal name, which provided a "motive to mislead [the officer] regarding her true name and identity." *Id.* at 776. The court concluded that the trial court could have disbelieved Smith's testimony that she gave the name "Jay Smith"

"[o]ut of habit for doing it for 17 years" and not out of an intent to deceive. *Id.* at 776–77.

■ Here, Officer Morse testified that, after he detained appellant by placing her in the back of his patrol car, he asked for her name, and she responded that her name was "Shay Marie." Appellant later provided this same name to Officer Pardo, but when he used this name to run a computer search for information, this name yielded no results. After finding appellant's school identification card which stated her legal name, Lavoshae Wygal, Officer Pardo used this name in a computer search, and the search pulled up appellant's driver's license.

Appellant argues on appeal that, given her legal name of Lavoshae Wygal, "Shay Marie makes a perfectly appropriate nickname," and she cites *Smith* for the proposition that a nickname can be "false" under section 38.02 only "when the surrounding circumstances indicate an intent to deceive." At trial, appellant testified on her own behalf. However, unlike the defendant in *Smith*, who at least offered some testimony that "Jay Smith," the name that she gave to the police officer, was a nickname that she had used for many years, appellant provided no testimony that "Shay Marie" is a nickname that she uses or that other people use for her. Appellant offered no explanation for the name of "Shay Marie" and did not attempt to connect that name to her. Instead, she testified that Officer Morse never spoke to her and that the only question Officer Pardo asked her was her date of birth, not her name.

The jury thus heard testimony that appellant told Officer Morse that her name was "Shay Marie," and it heard testimony that appellant's legal name is Lavoshae Wygal. The jury heard no testimony that "Shay Marie" is a nickname that appellant

answers to or uses. The jury therefore reasonably could have concluded that appellant intentionally gave Officer Morse a name that was "not true" or "not real." *See id.* at 775. We conclude that the State presented sufficient evidence that appellant provided Officer Morse with a false or fictitious name. *See* TEX. PENAL CODE ANN. § 38.02(b); *Smith*, 363 S.W.3d at 775.

■ Appellant also argues, in her first issue, that the State failed to present sufficient evidence that she gave Officer Morse a false or fictitious date of birth. Officer Morse testified that he asked appellant for her date of birth, and she responded that her birthdate was February 18, 1994. Officer Morse acknowledged that his supplement to the offense report stated that appellant told him that her birthdate was February 18, 1984. Officer Pardo also testified that appellant stated that her birthdate was February 18, 1994. Neither of these dates is accurate. The parties agree that appellant's correct birthdate is November 20, 1992. Appellant testified that Officer Morse did not ask her for her birthdate and that she gave the correct birthdate to Officer Pardo, who then wrote that date on her student identification card. The trial court admitted a copy of this card, with the handwritten birthdate notation, into evidence. Officer Pardo denied that he wrote appellant's birthdate on her identification card.

Thus, the jury heard conflicting evidence about which birthdate appellant provided to the officers. We presume that the jury resolved the conflicts in the evidence in favor of the verdict, and we defer to that determination. *Clayton*, 235 S.W.3d at 778; *Curry*, 30 S.W.3d at 406.

Appellant argues that the State "could not prove what allegedly false birthday she gave to Officer Morse" and that this "created a juror unanimity problem" because different jurors could believe that appellant gave different allegedly false birthdates to Officer Morse. As the State points out, however, it was not required to plead or prove the specific false date that appellant provided to Officer Morse, only that appellant did provide a false or fictitious date of birth. The complaint alleged only that appellant intentionally gave a false and fictitious date of birth to Officer Morse. The jury heard testimony that appellant provided Officer Morse with the birthdate of February 18, 1994, a date that was undisputedly inaccurate. The jury also heard testimony that appellant told Officer Morse that her birthdate was February 18, 1984, a date that was also undisputedly inaccurate. And the jury heard appellant's testimony that Officer Morse never asked her for her birthdate, but that she told the correct date, November 20, 1992, to Officer Pardo. The jury could have disbelieved appellant's testimony and credited Officer Morse's testimony that, regardless of whether appellant told him that her birthdate was February 18, 1984, or February 18, 1994, neither date was accurate. We conclude that the State presented sufficient evidence that appellant provided Officer Morse with a false and fictitious birthdate. *See* TEX. PENAL CODE ANN. § 38.02(b).

### C. Lawful Detention

■ There are three distinct types of interactions between law enforcement and citizens: (1) consensual encounters; (2) investigatory detentions; and (3) arrests. *State v. Woodard*, 341 S.W.3d 404, 410–11 (Tex. Crim. App. 2011). Here, the State was also required to prove that Officer Morse lawfully detained appellant. *See* TEX. PENAL CODE ANN. § 38.02(b)(2); *Gonzalez v. State*, 501 S.W.3d 283, 286 (Tex. App.—Corpus Christi 2016, no pet.) (holding that "lawful detention" is element of offense of failure to identify and, as such, defendant cannot ask trial court to rule on

legality of detention at pretrial suppression hearing). "Lawfully detained" is not statutorily defined, but "[c]ourts have interpreted the phrase *lawfully detained* in section 38.02 consistent with a Fourth Amendment analysis." *See Overshown v. State*, 329 S.W.3d 201, 208 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (emphasis in original).

■■■ No justification is required for an officer to approach and request information from a citizen, but generally, "when an officer through force or a showing of authority restrains a citizen's liberty, the encounter is no longer consensual," but it has instead become either a detention or an arrest. *Woodard*, 341 S.W.3d at 411. "[I]f there is a detention, the detaining officer must have reasonable suspicion that the person 'is, has been, or soon will be, engaged in criminal activity.'" *Rocha v. State*, 464 S.W.3d 410, 417 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd). An officer has reasonable suspicion to detain a person if the officer "has specific, articulable facts that, combined with rational inferences from those facts, would lead him to reasonably conclude that the person detained is, has been, or soon will be engaged in criminal activity." *State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. Crim. App. 2013). "These facts must show unusual activity, some evidence that connects the detainee to the unusual activity, and some indication that the unusual activity is related to crime." *Id.*

[8–10] The standard for determining whether reasonable suspicion exists is an objective one. *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). There only needs to be an objective basis for the detention; the subjective intent of the officer conducting the detention is irrelevant. *Id.*; *see also Kerwick*, 393 S.W.3d at 274 ("The test for reasonable suspicion is an objective one that focuses solely on whether an objective basis exists for the detention and disregards the officer's subjective intent."). "The reasonable suspicion determination is made by considering the totality of the circumstances." *Garcia*, 43 S.W.3d at 530; *see Arguellez v. State*, 409 S.W.3d 657, 663 (Tex. Crim. App. 2013) (noting that actions in series "may each seem innocent enough in isolation," but if actions, when examined in context of totality of circumstances, "reasonably suggest recent or imminent criminal conduct, an investigative detention is justified"); *Kerwick*, 393 S.W.3d at 274 ("A reasonable-suspicion determination requires looking at the totality of the circumstances and reasonable suspicion may exist even if those circumstances standing alone may be just as consistent with innocent activity as with criminal activity."). The State "need not establish with absolute certainty that a crime has occurred in order to show reasonable suspicion." *Garcia*, 43 S.W.3d at 530. However, the State must "elicit testimony of sufficient facts to create reasonable suspicion." *Id.*

■■■ Here, appellant challenges whether the State presented sufficient evidence that her detention by Officer Morse was lawful. Appellant argues that the State offered no evidence that Officer Morse believed appellant was engaged in or soon would be engaged in criminal activity. She argues that Officer Morse did not testify that appellant had done or would do anything illegal; nor did he specifically testify that he had reasonable suspicion to believe she was engaged in criminal activity. He instead testified only that he detained appellant for her own safety and for his safety.

The trial court instructed the jury in the charge that "'Lawful Detention' occurs when an officer has reasonable suspicion to believe that an individual is violating the law. A reasonable suspicion determination

is made by considering the totality of the circumstances." The evidence reflects that officers had an arrest warrant for Ross at a particular address—the address at which appellant lived. Officer Morse witnessed Ross drive a car in reverse into the driveway of the house and then jump out of the car. Ross then ran around the side of the house and into the backyard. Officer Morse followed Ross into the backyard but was impeded from going further into the yard by appellant's dogs. He did not see whether Ross continued running into another yard or whether he ran into the house. Appellant then opened the door and asked what was happening. Officer Morse testified that he explained that he was chasing a suspect, and he asked appellant if she knew anyone by Ross's name. Appellant said she did not, but she also stated that the car parked in the driveway—the car that Ross had just been driving—was her car. She gave no explanation for why a warrant suspect, who she had just said she did not know, was driving her car. Officer Morse then placed appellant, without handcuffs, in the backseat of his patrol car.

The State argues that, at this point in time, Officer Morse had reasonable suspicion that appellant was, had been, or soon would be engaged in criminal activity, specifically, the offense of hindering apprehension of a suspect. *See* Tex. Penal Code Ann. § 38.05(a) (West 2011) (providing that person commits offense if "with intent to hinder the arrest, prosecution, conviction, or punishment of another for an offense" she "harbors or conceals the other," "provides or aids in providing the other with any means of avoiding arrest or effecting escape," or "warns the other of impending discovery or apprehension"). We agree. The jury reasonably could have concluded, based on the totality of the circumstances, that Officer Morse had specific and articulable facts from which he could reasonably have concluded that ap-

pellant knew Ross, that Ross had run inside appellant's house, and that appellant was stalling Officer Morse to facilitate Ross's hiding or escape. Because the facts justify the conclusion that Officer Morse had reasonable suspicion to believe appellant was trying to hinder apprehension of Ross, the State presented sufficient evidence from which the jury could conclude that Officer Morse's detention of appellant was lawful. *See* Tex. Penal Code Ann. § 38.02(b); *Kerwick*, 393 S.W.3d at 273.

In arguing that her detention was unlawful, appellant focuses on Officer Morse's testimony that he detained her for her safety and for his own, arguing that there was no evidence that appellant was in danger from Ross, who had not been shown to have a history of hostage taking or violence, and any fear of Morse's that appellant would harm him was not objectively reasonable. We first note that, in determining whether Officer Morse had reasonable suspicion to detain appellant, Morse's subjective intent is irrelevant. *See Kerwick*, 393 S.W.3d at 274 ("The test for reasonable suspicion is an objective one that focuses solely on whether an objective basis exists for the detention and disregards the officer's subjective intent."); *see also Garcia*, 43 S.W.3d at 530 (stating that because reasonable suspicion is objective determination, officer's motives in conducting traffic stop were irrelevant to validity of stop). Thus, the fact that Officer Morse did not specifically testify that he had reasonable suspicion appellant was involved in criminal activity does not, by itself, render the evidence insufficient to support appellant's conviction.

The State presented evidence that an objective basis existed that appellant was potentially involved with harboring Ross. *See Kerwick*, 393 S.W.3d at 274 ("A reasonable-suspicion determination requires looking at the totality of the circumstances

and reasonable suspicion may exist even if those circumstances standing alone may be just as consistent with innocent activity as with criminal activity."). Furthermore, in testifying that he detained appellant for her safety and his safety, Officer Morse also stated that he did not know whether Ross had run into the house and he did not know whether appellant, whom Morse did not know, was related to or connected with Ross. As we have held, despite appellant's protestations that she did not know Ross, the State presented evidence that Officer Morse reasonably could have believed that appellant was not being truthful when she denied knowing Ross: namely, evidence that Ross had been driving appellant's car immediately prior to fleeing and appellant's lack of explanation for why a man she supposedly did not know was driving her car and pulled into her driveway, jumped out of the car, and ran behind the house.

We hold that the State presented sufficient evidence that Officer Morse had reasonable suspicion to detain appellant and, thus, that her detention was lawful.[5] *See* TEX. PENAL CODE ANN. § 38.02(b); *Kerwick*, 393 S.W.3d at 273.

We overrule appellant's sole issue.

## Conclusion

We affirm the judgment of the trial court.

---

**5.** Because we hold that the State presented sufficient evidence that Officer Morse had reasonable suspicion to detain appellant, we need not address appellant's argument concerning whether the United States Supreme Court's opinion in *Michigan v. Sum-*

*mers*, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981), which addressed the detention of an individual while police officers were executing a search warrant at his house, justifies her detention.